NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0548n.06
Filed: June 24, 2005

Case No. 04-1578

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JAMES B. MUELLER, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| Plaintiff-Appellant, | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| v. | ) | |
| | ) | |
| LAWRENCE GALLINA, and | ) | |
| JOHN and JANE DOES, 1-10, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: CLAY and GIBBONS, Circuit Judges; STAFFORD, District Judge.*

STAFFORD, District Judge. Appellant appeals the district court's order granting the defendant's motion for judgment on the pleadings in this civil rights action under the Fourth Amendment. We affirm.

I. BACKGROUND

A. THE ALLEGATIONS

The plaintiff, James Mueller ("Mueller"), is a special agent with the United States Drug Enforcement Agency ("DEA") who was assigned to the Detroit Field Division at all times relevant to this action. The defendant, Lawrence Gallina ("Gallina"), was the

* The Honorable William Stafford, United States District Judge for the Northern

District of Florida, sitting by designation.

Special Agent in Charge ("SAC") of DEA's Detroit Field Division from 1996 to 1999.

On July 11, 2000, a United States Magistrate Judge signed two search warrants, one for Mueller's personal residence and one for his office at DEA. The magistrate judge found probable cause to support issuance of the warrants based upon facts outlined in an eight-page affidavit prepared by William Faiella ("Faiella"), an Inspector with DEA's Office of Professional Responsibility ("OPR"). In his affidavit, which is attached to the complaint, Faiella explained that he and others were conducting a criminal investigation into allegations that Mueller:

> (a) submitted a false document to a federal grand jury in response to a grand jury subpoena; (b) supplied the same false document in order to purchase two machine guns; (c) provided the same false document to BATF [the Bureau of Alcohol, Tobacco and Firearms] in order to register the two machine guns; and (d) claimed an improper deduction that caused his tax return to be false.

J.A. at 16.

Described in Faiella's affidavit was a letter dated September 12, 1997, purportedly from Gallina to Heckler and Koch, Inc., the manufacturer of the MP5 submachine gun, authorizing Mueller to purchase an MP5, a weapon not ordinarily authorized for official use by DEA special agents. Faiella stated in his affidavit that, when Gallina was interviewed as part of OPR's investigation, Gallina denied having reviewed, signed, or authorized the letter authorizing Mueller to purchase the MP5.

Also described in Faiella's affidavit were the results of Faiella's interviews with (a) Gallina's secretary, who not only noted a number of irregularities in the letter purportedly written by Gallina but also said that she would not have forwarded such a

letter to the SAC for his approval; (b) the owner and president of Great Lakes Police Supply Co., Inc. ("Great Lakes"), who stated that, when Mueller purchased two MP5 submachine guns from Great Lakes, one in 1997 and a second in 1999, he provided letters from DEA authorizing the purchases; (c) a Heckler & Koch representative, who reported that Heckler & Koch had no record of receiving the September 12, 1997, letter purportedly written by Gallina and no record of receiving any purchase requests for firearms from Mueller; (d) the Detroit Division Primary Firearms Instructor ("PFI"), who found no documents in the division's records authorizing Mueller to carry or use a submachine gun for official duties; and (e) all current and former PFIs and all supervisory personnel, each of whom stated that Mueller had not been seen using or carrying a submachine gun.

Based on his interviews and review of documents received from a number of sources, Faiella determined that there was evidence to establish that Mueller purchased two submachine guns from Great Lakes, that he submitted a copy of the authorization letter purportedly written by Gallina on September 12, 1997, to Great Lakes when he purchased the weapons, that he submitted a copy of the same letter to the Oakland County Sheriff in order to obtain the Law Enforcement Certification needed to carry the weapons, that he submitted a copy of the same letter to ATF-National Firearms Act Branch ("ATF-NFA") when he sought registration of the two submachine guns, and that a copy of the same letter was submitted to an IRS case agent to explain a "miscellaneous deduction" for job expenses, namely for the purchase of firearms. Because Gallina denied having written the September 12, 1997, letter, Faiella concluded that there was probable cause to believe that Mueller both created and

forged a document that he then used to purchase, register, and obtain a license for weapons that he was not authorized to carry. Faiella accordingly sought search warrants for Mueller's home and office, alleging that there was probable cause to believe that Mueller's home and/or office contained evidence of Mueller's wrongdoing.

In late November, 2000, after the search of both his home and his office, Mueller was told that the Department of Justice ("DOJ") had declined to prosecute him for any criminal violations. Indeed, according to Mueller's allegations, DOJ had determined that Gallina, and not Mueller, had signed the disputed letter and that Gallina had, in fact, authorized the purchase of the MP5s.

## B. THE PROCEEDINGS

Mueller filed a complaint in the district court on July 2, 2002, alleging violations of federal constitutional law--specifically the Fourth Amendment--under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against Gallina and various John and Jane Does, also DEA employees. Among other things, Mueller alleged that Gallina's statements to Faiella regarding the September 12, 1997, letter were false and that such statements materially contributed to the unlawful searches of Mueller's home and office.

On May 2, 2003, Gallina filed a motion for judgment on the pleadings. After the district court granted the motion, Mueller moved for a dismissal without prejudice against the remaining defendants, John and Jane Does 1-10. The dismissal of the charges against the Doe defendants was entered on April 22, 2004, and Mueller thereafter filed a timely notice of appeal on April 26, 2004.

## C. THE DISTRICT COURT'S DECISION

In granting Gallina's motion for judgment on the pleadings, the district court determined that Gallina did not have "direct, personal participation" in the searches alleged to constitute a Fourth Amendment violation. The allegations revealed that Gallina did not execute or procure the allegedly defective search warrants, was not the affiant on the warrants, did not initiate or conduct the investigation into Mueller's alleged wrongdoing, and did not supervise others who conducted the investigation that resulted in the issuance of the search warrants. The district court characterized Gallina as "a former administrator with personal, firsthand knowledge of the subject matter being investigated by the OPR," who only "spoke in the capacity of a witness." J.A. at 29. The district court concluded that, in such capacity, Gallina was not clothed with federal authority and his alleged wrongdoing was outside the scope of the Fourth Amendment.

## II. STANDARD OF REVIEW

This court reviews a district court's grant of a Rule 12(c) motion for judgment on the pleadings under "the same *de novo* standard applicable to a motion to dismiss under Rule 12(b)(6)." *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001). The court must "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Id.* at 512.

## III. DISCUSSION

Mueller contends that the district court erred in dismissing his complaint for failure to state a claim under *Bivens*.

In *Bivens*, the Supreme Court held that a violation of the Fourth Amendment by a

federal agent acting under color of federal authority gives rise to a cause of action for damages flowing from the unconstitutional conduct. *Bivens*, 403 U.S. at 389. In order to state a cause of action under *Bivens*, the plaintiff must allege facts which show that the individual defendant acted "under color of federal authority" and was personally involved in the deprivation of the plaintiff's constitutional rights. *See, e.g.*, *Browning v. Clinton*, 292 F.3d 235, 250 (D.C. Cir. 2002) (explaining that action under "color of federal authority" is critical to a *Bivens* claim); *Gossmeyer v. McDonald,* 128 F.3d 481, 495 (7th Cir.1997) (explaining that personal involvement is required to state a claim under *Bivens*).

Not all actions of a government official are, "simply by virtue of the official government's employ, accomplished under the color of [federal] law." *Browning*, 292 F.3d at 250 (quoting *Johnson v. Knowles*, 113 F.3d 1114, 1117-18 (9th Cir. 1997)). To be "under color of authority," the conduct must be "cloaked with official power [and the official must] purport [ ] to be acting under color of official right." *Id.* (quoting *Lopez v. Vanderwater*, 620 F.2d 1229, 1236 (7th Cir. 1980)); *see also West v. Atkins*, 487 U.S. 42, 49 (1988) (explaining, in the context of a section 1983 case, that a person acts under color of state law if he exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law") (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941); *Dang Vang v. Vang Xiong X. Toyed*, 944 F.2d 476, 479 (9th Cir. 1991) (stating that "generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law").

In this case, Mueller alleged that Gallina was the Special Agent in Charge of

DEA's Detroit Field Division from 1996 to 1999.  He did not allege what, if any, government position Gallina held when, in June of 2000, Gallina was interviewed by Faiella during Faiella's investigation into alleged wrongdoing by Mueller.  Assuming, for the sake of argument, that Gallina was, in fact, a government official when he answered Faiella's questions, Mueller alleged in his complaint that Gallina merely gave false information during the course of an investigation; Mueller did not allege that Gallina in any way initiated, supervised, or directed that investigation.  Mueller's complaint made clear that it was Faiella, not Gallina, who took that false information, failed to establish its veracity, and included that information in an affidavit presented to a federal magistrate judge, thereby procuring purportedly defective search warrants.  While Gallina may have been cloaked with some federal authority by virtue of being a federal employee, he did not exercise that authority during the course of Faiella's investigation into Mueller's activities.  The only action that Gallina allegedly took was answering the questions of a federal investigator; he acted as a mere witness and nothing more.  Because Mueller did not allege that Gallina violated Mueller's constitutional rights by exercising powers that Gallina possessed by virtue of Gallina's official position, the district court was correct in granting Gallina judgment on the pleadings.  Accordingly, we AFFIRM.