*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0263p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

GERALDINE BURLEY; CAROLINE BURLEY,
              *Plaintiffs-Appellants*,


      *v.*

Nos. 12-1820/13-1098

JEFFERY GAGACKI; WAYNE COUNTY; EARL
DOE; PATRICK BROWNE; SHAWN REED;
BRIAN WOLOSKI; SCOTT HARDING, WILLIAM
HANGER, aka "K. Hanger"; JEFFREY PIEROG;
and CHRISTOPHER LAND,
                *Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:10-cv-10555—Bernard A. Friedman, District Judge.

Argued: July 31, 2013

Decided and Filed: September 6, 2013

Before: GILMAN, GRIFFIN, and STRANCH, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Stanley I. Okoli, ROMANO LAW, P.L.L.C., Southfield, Michigan, for Appellants in 12-1820 and 13-1098. Theresa M. Urbanic, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellees Gagacki, Browne, Reed, Woloski, and Harding in 12-1820 and 13-1098. Aaron C. Thomas, WAYNE COUNTY CORPORATION COUNSEL, Detroit, Michigan, for Appellee Wayne County. Joseph T. Froehlich, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee Hanger. Raechel M. Badalamenti, KIRK HUTH, LANGE & BADALAMENTI, PLC, Clinton Township, Michigan, for Appellee Pierog. John A. Schapka, MACOMB COUNTY CORPORATION COUNSEL, Mount Clemens, Michigan, for Appellee Land. **ON BRIEF:** Stanley I. Okoli, ROMANO LAW, P.L.L.C., Southfield, Michigan, for Appellants in 12-1820 and 13-1098. Theresa M. Urbanic, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellees Gagacki, Browne, Reed, Woloski, and Harding in 12-1820 and 13-1098. Aaron C. Thomas, WAYNE COUNTY CORPORATION COUNSEL, Detroit, Michigan, for Appellee Wayne County. Joseph T. Froehlich, OFFICE OF THE MICHIGAN

ATTORNEY GENERAL, Lansing, Michigan, for Appellee Hanger.  Raechel M. Badalamenti, KIRK HUTH, LANGE & BADALAMENTI, PLC, Clinton Township, Michigan, for Appellee Pierog.    John A. Schapka, MACOMB COUNTY CORPORATION COUNSEL, Mount Clemens, Michigan, for Appellee Land.

———————————

**OPINION**

———————————

GRIFFIN, Circuit Judge.  On June 13, 2007, masked law enforcement agents, dressed in black, with guns drawn, broke into a home at 20400 Greeley Street in the City of Detroit.  Within the confines of plaintiffs' home, the masked agents allegedly assaulted and terrorized plaintiffs Geraldine and Caroline Burley.  When Geraldine Burley asked the intruders to identify themselves, the agents refused, responding instead that they were "Team 11."

In this action asserting claims of excessive force and violation of the Fourth Amendment, the identities of the masked agents who raided the home and allegedly assaulted plaintiffs became the central focus of the litigation.  This task was difficult for plaintiffs because the agents intentionally concealed their identities and the raid was part of a vast multi-law enforcement operation involving Wayne County, and federal, state, and municipal law enforcement agents.

Before trial, the district court granted summary judgment in favor of defendants Wayne County and the state and municipal officers.  Thereafter, trial began against the federal agents, only.  However, at the close of plaintiffs' proofs on liability, the district court granted judgment as a matter of law in favor of the federal defendants.  Later, the district court awarded the federal defendants costs and required plaintiffs to post a supersedeas bond.  Plaintiffs now appeal.

Regarding the federal defendants, we hold that judgment as a matter of law was error requiring reversal because genuine issues of material fact exist with respect to their personal involvement in the raid and alleged conduct in violating plaintiffs' constitutional rights.  Further, on remand, the district court may consider whether the

circumstances of this case, which include an intentional concealment of identity, coupled with an "I wasn't there" defense, warrants shifting the burden of production onto the federal agents to establish their lack of involvement. *See generally Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959 (9th Cir. 2001). We find no error requiring reversal in the district court's other rulings. Accordingly, we AFFIRM in part, REVERSE in part, VACATE the judgment of costs and supersedeas bond order, and REMAND for further proceedings consistent with this opinion.

## I.

The search of plaintiffs' home was part of "Operation 8 Mile," a large-scale, multi-agency effort targeting drug trafficking and other crimes in the area known as the "8 Mile Corridor." Hundreds of officers from numerous agencies assisted in securing and executing warrants at locations of suspected illegal drug activity. The federal defendants named in plaintiffs' complaint were part of a special task force of the Drug Enforcement Agency ("DEA") known as DEA Group 6.[1] The state and local defendants named in plaintiffs' complaint were part of a narcotics task force called the County of Macomb Enforcement Team ("COMET").

According to plaintiffs, they were inside their home located at 20400 Greeley Street in the City of Detroit on June 13, 2007, when they heard a loud boom. When Geraldine Burley came upstairs from the basement, an officer put a gun to her face and said "[g]et on the floor." She explained that she needed to ease herself to the floor because she had undergone two knee replacements. At that point, another officer appeared, ordered Geraldine to the floor, and shoved her into the table. She hit her head, shoulder, neck, and back against the table as she fell to the ground. Another officer walked on top of her body. When Geraldine's adult daughter, Caroline, heard the loud boom and entered the living room, an officer allegedly put a gun to her face and told her, "[s]top, put your hands up." The officer threw her against the wall and onto the floor. When he placed his foot on her back, Caroline hollered, "[g]et your feet out [of] my

---

[1]Gagacki, although employed by the Wayne County Sheriff's Office, was assigned to DEA Group 6 at all times relevant to this case.

back. I've had back surgeries." Sometime thereafter, another officer placed his foot on her back, and Caroline again explained that she had undergone back surgeries. Later, all occupants of plaintiffs' home were secured in the living room. According to plaintiffs, the officers were dressed in black clothing with their faces covered except for their eyes, concealing their identities. When Geraldine asked for the officers' names, one of the officers was about to write them down when another officer stopped him and said, "No, just put Team 11."

In this action, the identities of the raiding and assaulting officers was critical because individual liability requires a showing of personal involvement in the deprivation of a constitutional right. To this end, plaintiffs' attorneys requested, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, disclosure of the identities of the officers involved. Two years later, Wayne County furnished an investigation report prepared by DEA Officer Daniel Krause regarding the raid of plaintiffs' residence at 20400 Greeley. The report indicates that Jeffery Gagacki, Patrick Browne, Shawn Reed, Brian Woloski, Scott Harding, and William Hanger ("federal defendants"), and Christopher Land and Jeffrey Pierog ("state and local defendants") executed the search warrant at 5:35 p.m. on June 13, 2007. Relying on this information, plaintiffs promptly amended their complaint to add the aforementioned individual defendants.

A second DEA report indicates that Gagacki, Browne, Reed, Woloski, Harding, Perry Dar, and Calvin Higgins executed a search warrant at 20400 Hull, a nearby address, at 5:30 p.m. on the same day. The district court record also includes two Wayne County incident reports signed by Gagacki, one for 20400 Greeley and the other for 20400 Hull, indicating that the searches were executed simultaneously, both beginning at 6:00 p.m. The Wayne County incident reports do not list the officers involved.

Plaintiffs' amended complaint alleged three counts. In Count I, plaintiffs claimed that the state and local defendants used excessive force in executing the search warrant at their home, thereby violating their constitutional rights and entitling them to damages under 42 U.S.C. § 1983. In Count II, also brought under § 1983, plaintiffs alleged that

Wayne County had a policy of allowing officers to use excessive force and a policy of withholding officer identities and denying the existence of records to prevent victims from redressing police misconduct, and that these policies either caused or contributed to the violation of their constitutional rights. *See generally Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). In Count III, plaintiffs alleged that the federal defendants violated their rights secured by the Fourth Amendment, resulting in civil liability under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

In the initial stages of discovery, the federal defendants did not affirmatively assert their lack of involvement in the raid. It was only in their depositions, after the limitations period had run, that the federal defendants alleged that they did not participate in the raid of plaintiffs' home but were instead executing a search warrant at 20400 Hull at the time. Gagacki and Reed testified that it would be physically impossible for an officer to have engaged in the execution of both search warrants simultaneously or, at most, five minutes apart. Gagacki admitted that he entered plaintiffs' residence, but he claims to have done so only after the premises were secured in order to prepare the search warrant return; at that point, plaintiffs were already seated in the living room. Responding to the federal defendants' belated "I wasn't there" defense, plaintiffs filed a motion seeking the sanction of default. Plaintiffs complained that the federal defendants waited until their depositions to deny participation in the execution of the search warrant at their residence and to identify other members of DEA Group 6 who may have been present. The district court denied the motion because it found insufficient proof of any discovery violation—rather, "[t]he only thing we have is the plaintiffs' general dissatisfaction with the lack of information that they received."

Thereafter, all defendants moved for summary judgment. The district court granted Wayne County's motion, concluding that (1) plaintiffs failed to provide any support for the assertion that Wayne County had a duty to train non-Wayne County police officers; (2) Wayne County presented evidence that it trained its deputies on the subjects of use of force and citizens' arrests; and (3) Wayne County presented evidence

that it had a policy of complying with FOIA and *did* produce records pertaining to the search of plaintiffs' home.

The district court also granted summary judgment in favor of the state and local defendants. First, with regard to plaintiffs' claim that the warrant was defective because it contained "discrepancies," the district court found that plaintiffs failed to provide "allegations of deliberate falsehood or of reckless disregard for the truth" and therefore did not "defeat the strong presumption of validity of a warrant affidavit." Moreover, even assuming a discrepancy, the district court found that plaintiffs failed to demonstrate that the misstatement was material to a finding of probable cause. Thus, plaintiffs failed to create a genuine issue of material fact whether the search of 20400 Greeley was made pursuant to a valid search warrant.

Second, the district court concluded that the state and local defendants' role in Operation 8 Mile was limited to assisting the DEA by providing "perimeter security." Unrebutted testimony revealed that "the DEA had their own entry team," and COMET entered the house only after the premises was secured. Because the state and local defendants were indisputedly assigned to perimeter security, the district court found that they "did not observe or have reason to know that excessive force would be or was being used."

However, the district court denied the federal defendants' motion for summary judgment. The federal defendants argued that they were entitled to qualified immunity and plaintiffs failed to create a genuine issue of material fact that they used any force, much less excessive force, against them. But the district court found that plaintiffs' account of their treatment during the raid of their home "could" constitute excessive force and there was "a question of fact regarding whether [the federal defendants] were present in the home during the alleged exercise of excessive force" and may have "witnessed such force." According to the district court, the possibility of the federal defendants' presence inside plaintiffs' home was established by the warrant reports.

Proceeding to trial against the federal defendants only, plaintiffs filed motions in limine to exclude evidence of Geraldine Burley's prior slip-and-fall lawsuit against

a hotel and evidence that plaintiffs receive Social Security disability benefits. The district court denied plaintiffs' motions, finding that the evidence was admissible on the question of damages. According to the district court, when plaintiffs allegedly suffered injuries during the raid of their home, they were already receiving Social Security disability benefits for the same or similar injuries, and Geraldine's injuries alleged in the present lawsuit were also alleged in her prior slip-and-fall claim.

Nearing the close of plaintiffs' proofs on liability, and after all other witnesses had testified, the following sidebar conference occurred:

> MR. OKOLI [plaintiffs' counsel]: We propose putting on the plaintiffs at this time because they recognize some of the voices of the officers.
>
> MR. WOODARD [federal defendants' counsel]: The voices of the officers?
>
> MR. OKOLI: Yes.
>
> THE COURT: In your opening statement—what's your argument?
>
> MR. WOODARD: That's contrary to the opening statements. It's the first I've ever heard of this.
>
> MR. OKOLI: Sure, they never saw—they testified they didn't recognize them visually, but they recognized them from the sounds of their voices.
>
> THE COURT: You can put them on.
>
> MR. OKOLI: Thank you.
>
> THE COURT: I would remind you of the penalty of perjury.
>
> MR. OKOLI: Sure.

At trial, Geraldine Burley testified that she recognized Gagacki's voice as one she had heard during the execution of the search warrant at her home. Allegedly, she recognized Gagacki's voice for the first time when he testified. She insisted that she remembered hearing Gagacki's voice while she was sitting on the kitchen floor (i.e., when the alleged use of excessive force occurred), although she could not recall what Gagacki had said. Additionally, Caroline Burley testified that she recognized Woloski's voice for the first time after hearing him testify and seeing him on the stand. She said

that Woloski handed her paperwork in the living room, after the execution of the search warrant.

Following this testimony, the federal defendants moved for judgment as a matter of law.  Addressing the motion, the district court judge who admitted into evidence the voice-recognition evidence, expressed a sense that plaintiffs' belated claims that they recognized the voices of Gagacki and Woloski was unfair.  "The first time that [the district court] heard of the allegations that there was some identification either by voice or otherwise was . . . moments before" plaintiffs took the stand.  The district court described plaintiffs' actions as "trial by ambush."  After ostensibly considering all of the admissible evidence, the district court ruled that no reasonable jury could find that the federal defendants "observed or had reason to know that excessive force was being used" or "had both the opportunity and means to prevent" it from occurring.  Thus, the district court awarded the federal defendants judgment as a matter of law.  Plaintiffs timely appealed.

Following the district court's judgment, the federal defendants filed a bill of costs, which the district court granted in the amount of $5,761.47.  Plaintiffs moved to stay the judgment of costs pending the outcome of their appeal.  The district court granted plaintiffs' motion to stay, but required plaintiffs to post a supersedeas bond in the amount of $5,761.47.  Plaintiffs filed a motion for reconsideration of the supersedeas bond order, which the district court denied.  When plaintiffs failed to timely comply with the supersedeas bond order, the federal defendants filed a motion to lift the stay, which the district court granted.  Meanwhile, plaintiffs had filed a motion for an extension of time to appeal the supersedeas bond order, which the district court granted.  Having received leave from the district court, plaintiffs appealed.

Plaintiffs raise six issues on appeal.  They argue that the district court committed error requiring reversal by (1) denying plaintiffs' motion for the sanction of default; (2) granting Wayne County's motion for summary judgment; (3) granting the state and local defendants' motion for summary judgment; (4) denying plaintiffs' motions in limine; (5) granting the federal defendants' motion for judgment as a matter of law; and

(6) awarding costs in favor of the federal defendants and ordering plaintiffs to post a supersedeas bond.

II.

We review a district court's decision whether to impose discovery sanctions for an abuse of discretion. *Louzon v. Ford Motor Co.*, 718 F.3d 556, 560 (6th Cir. 2013). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000) (internal quotations marks and brackets omitted). We will reverse under this standard only when we are "firmly convinced that a mistake has been made." *Morales v. Am. Honda Motor Co., Inc.*, 151 F.3d 500, 516 (6th Cir. 1998).

In their motion for a default, plaintiffs complained that the federal defendants violated a discovery request. In particular, the federal defendants were asked in interrogatories whether they denied the allegation that they had violated plaintiffs' Fourth Amendment rights. If so, they were instructed to provide all reasons for denying the allegation. Although the federal defendants responded by denying that they had violated plaintiffs' rights, they did not affirmatively assert their absence from the scene as a reason—thus, their responses were, at a minimum, incomplete. It was only in their depositions, after the limitations period had run, that the federal defendants alleged that they were not present during the execution of the search warrant. Obviously, this information would have been helpful to plaintiffs earlier in the litigation. However, while it was apparent that the federal defendants did not fully respond to the interrogatories, plaintiffs failed to file a motion to compel discovery.

In addition, plaintiffs filed their motion for the sanction of default pursuant to Federal Rule of Civil Procedure 37(b), which provides that a district court may render a default judgment against a party who fails to comply with a court order compelling disclosure or discovery. By its terms, Rule 37(b) requires a party seeking a sanction of default against a party to secure a court order compelling disclosure or discovery. *DeJesus v. Adkins*, 46 F. App'x 244, 247 (6th Cir. 2002) (order); *see also Malautea v.*

*Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir. 1993) ("[T]he severe sanction of . . . default judgment is appropriate only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders."). Here, because plaintiffs never moved to compel disclosure or discovery, the federal defendants did not violate any court order that would justify *any* sanction under Rule 37, let alone the sanction of last resort.

Plaintiffs also contend that the federal defendants' belated denial of being present should have been included as an affirmative defense in their response to plaintiffs' complaint. But plaintiffs failed to raise this argument below. Moreover, plaintiffs' understanding of the law is incorrect. It is firmly established that a plaintiff asserting a *Bivens* claim, as part of her prima facie case, must offer evidence to support an individual defendant's personal involvement in the deprivation of a constitutional right. *Mueller v. Gallina*, 137 F. App'x 847, 850 (6th Cir. 2005); *Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997). Thus, under normal circumstances, a defendant's absence from the scene is not an affirmative defense for which the defendant bears the burden of proof. For these reasons, the district court did not abuse its discretion in denying plaintiffs' motion for the sanction of default.

### III.

Next, plaintiffs challenge the grant of summary judgment in favor of Wayne County, which we review de novo. *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *CareToLive v. FDA*, 631 F.3d 336, 340 (6th Cir. 2011).

"A municipality can be liable under 42 U.S.C. § 1983 only if the plaintiff can demonstrate that his civil rights have been violated as a direct result of that municipality's policy or custom" or if a "failure to train amounts to deliberate indifference" to such rights. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 900 (6th Cir. 2004) (citing *Monell*, 436 U.S. at 694). Needless to say, for a municipality's

policy or custom to directly result in a violation of civil rights, the policy or custom must be in operation. In this case, plaintiffs conceded in their complaint that Gagacki, the only Wayne County employee alleged to have participated in the execution of the search warrant at their home, was "deputized as a federal drug enforcement agent working under the auspices of the federal government." As such, with regard to the raid itself, the district court properly concluded that the federal government's policies and customs were at issue, and not those of Wayne County.

Plaintiffs also claim that Wayne County maintained an unconstitutional custom or policy of withholding the identities of its deputies to thwart victims' efforts to redress police misconduct. The evidence, however, belies such a claim. Wayne County submitted evidence of its policy to comply with FOIA and process such requests in a timely manner. Further, the evidence reveals that Wayne County identified to plaintiffs the DEA as the agency to contact for the records pertaining to the raid of their home. Wayne County provided plaintiffs with a contact name and number at the DEA to facilitate their efforts. Although the DEA apparently failed to furnish documents related to the search of plaintiffs' home, the district court properly reasoned that Wayne County "is not liable for the DEA's actions."

Plaintiffs' theory based on a failure to train similarly fails. A municipality's duty to train extends only to "its employees," *City of Canton v. Harris*, 489 U.S. 378, 389 (1989), and it can be liable only if its failure to train was "closely related to" or "actually caused" the plaintiff's injuries, *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989). Plaintiffs have failed to provide proof on either essential element. There is no evidence in the record that anyone in Wayne County's employ, other than Gagacki, participated in the execution of the search warrant at 20400 Greeley. To the contrary, the evidence indicates that the individuals who executed the search warrant were either directly employed by, or, like Gagacki, working under the supervision of, the DEA. Any duty to train rested with the DEA, and only the DEA's inadequate training could form the basis of a failure-to-train claim. In short, viewing the evidence in the light most favorable to plaintiffs, no reasonable jury could find municipal liability under § 1983.

IV.

Plaintiffs also appeal the grant of summary judgment in favor of the state and local defendants, which we review de novo. *Geiger*, 579 F.3d at 620. Plaintiffs no longer contest the validity of the search warrant, but limit their argument on appeal to their use-of-excessive-force claim brought under 42 U.S.C. § 1983.

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006). "The use of excessive force in the execution of a search warrant constitutes a Fourth Amendment violation." *Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010). To establish liability against an individual defendant acting under color of state law, a plaintiff must show that the defendant was "personally involved" in the use of excessive force. *Id*. at 650.

As evidence of the state and local defendants' personal involvement, plaintiffs point to the investigation report, which lists them as having been present during the execution of the search warrant. The state and local defendants concede that they were present at the scene. However, other record evidence, which is not inconsistent with the investigation report, overwhelmingly indicates that the state and local defendants were *not* part of the entry team and their role was limited to perimeter security. According to unrebutted testimony, "the DEA had their own entry team," and COMET entered the house only after the premises was secured. Until then, COMET performed perimeter security only. Even Krause, who is not a party to this litigation, testified that COMET's role was limited to providing perimeter security. As Krause explained, "[p]erimeter security is just as it says, to secure the perimeter, [so] that when agents are making entry, that no one comes up to the house and if there's anybody running from the house, it's our job to detain them at that time." "As a general rule, mere presence at the scene of a search, without a showing of direct responsibility for the action, will not subject an

officer to liability."  *Ghandi v. Police Dep't of Detroit*, 747 F.2d 338, 352 (6th Cir. 1984).

Plaintiffs point to evidence suggesting that the state and local defendants entered their home at some point.  However, such evidence does not create a question of fact as to whether they were part of the entry team.  According to Krause, "[a]fter the residence was secured, meaning the entry team secures the basement, the main floor and the upstairs, they'll announce to the outside perimeter people that the house is secure, we can come in."  Simply, the fact that the state and local defendants entered plaintiffs' home at some point does not establish their personal involvement in the alleged use of excessive force.

Alternatively, plaintiffs argue that the state and local defendants are liable under a failure-to-intervene theory.  "[A] police officer who *fails* to act to prevent the use of excessive force may still be held liable where '(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring.'"  *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)).    This argument lacks merit for the same reasons stated above—undisputed testimony overwhelmingly indicates that the state and local defendants were not part of the entry team but provided perimeter security only.  Because no evidence places the state and local defendants inside plaintiffs' home at the appropriate time to witness or respond to any unconstitutional conduct that may have occurred, the district court properly granted their motion for summary judgment.

V.

Next, plaintiffs argue that the district court erred in denying their motions in limine.  We review for an abuse of discretion a district court's ruling on a motion in limine. *Branham v. Thomas M. Cooley Law Sch.*, 689 F.3d 558, 562 (6th Cir. 2012).  In this case, plaintiffs sought to exclude evidence of their receipt of Social Security disability benefits and Geraldine's prior slip-and-fall claim against a hotel.  The district court ruled that the evidence was admissible on the question of damages because the

benefits that plaintiffs receive, and the compensation awarded in the prior lawsuit, are for injuries similar to those allegedly sustained during the search of their residence. Although plaintiffs now challenge the district court's ruling of admissibility, the ruling had no bearing on the outcome of the proceedings because the evidence was never introduced at trial. *United States v. Morales*, 687 F.3d 697, 702 (6th Cir. 2012). Consequently, the alleged error is moot. *See generally United States v. Marrero*, 651 F.3d 453, 471 (6th Cir. 2011) ("[R]eversal is appropriate only if the abuse of discretion was not harmless error, that is, only if the erroneous evidentiary ruling affected the outcome of the trial." (internal quotation marks and brackets omitted)).

## VI.

Next, plaintiffs challenge the grant of judgment as a matter of law in favor of the federal defendants, which we review de novo. *Jackson v. FedEx Corp. Servs., Inc.*, 518 F.3d 388, 391–92 (6th Cir. 2008). Judgment as a matter of law is appropriate "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). "In other words, the decision to grant judgment as a matter of law or to take the case away from the jury is appropriate whenever there is a complete absence of pleading or proof on an issue material to the cause of action or when no disputed issues of fact exist such that reasonable minds would not differ." *Jackson v. Quanex Corp.*, 191 F.3d 647, 657 (6th Cir. 1999) (internal quotation marks omitted).

In this case, the district court determined that the federal defendants were entitled to judgment as a matter of law on plaintiffs' *Bivens* claim. *Bivens* provides for personal liability against a federal officer for violating an individual's constitutional rights. 403 U.S. at 388. In pursing such a claim, a plaintiff must be able to identify with particularity the federal officer who engaged in the alleged misconduct because a federal officer "is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). In this appeal, plaintiffs assert that the record contains evidence from which

a reasonable jury could find that the federal defendants were the individuals who entered their home and engaged in the use of excessive force.  We agree.

We conclude that judgment as a matter of law was error requiring reversal in light of the voice-recognition evidence.  Although the district court correctly discounted the testimony placing Woloski at the scene (because Caroline Burley stated that she heard his voice only *after* the search warrant had been executed), it improperly discredited Geraldine Burley's testimony that she recognized Gagacki's voice as one she heard *during* the execution of the search warrant.  The district court reasoned:

> [T]here has to be some kind of evidence that the [federal defendants] observed or had reason to know excessive force was being used, that [they] had both the opportunity and means to prevent that from happening and so forth.  And, again, even [viewing the voice-recognition] testimony in the light most favorable to them, there [are] no facts that a reasonable jury could rely upon especially in light of the fact that [Geraldine] testified that they all had masks on, and that she had already been hit on the head [when she allegedly heard Gagacki's voice].

In general, witness credibility is a jury function. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  In deciding whether to grant a motion for judgment as a matter of law, the district court must consider all admissible evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party, *"without making credibility determinations or weighing the evidence."*  *Jackson*, 518 F.3d at 392 (emphasis added).

In the present case, although there may be reasons to discount Geraldine Burley's voice-recognition testimony, the decision should have been left to the jury.  If a jury believed Geraldine's testimony, then it could reasonably find that Gagacki was part of the entry team that executed the search warrant.  From there, it would be reasonable to infer that Gagacki (1) was personally involved in the alleged use of excessive force or (2) failed to intervene to prevent it.  Further, because Gagacki and the other federal defendants worked as a team at all times relevant to this case, a jury could reasonably infer that the other federal defendants also (1) were personally involved in the alleged use of excessive force or (2) failed to intervene to prevent it.  Under these circumstances,

the evidence and its reasonable inferences created a disputed issue of material fact such that reasonable minds could differ.

Additionally, we are not inclined to shield the federal defendants from liability as a reward for their unethical refusal to identify themselves by name and badge number. There is no dispute that the raid of plaintiffs' residence occurred. Moreover, plaintiffs' inability to identify the officers who entered their home is the consequence of the agents' conduct—the officers wore black clothing and face masks, with the intent to conceal their identities, and refused to provide their names when asked. Significantly, the federal defendants' names are listed on the report of investigation as the parties who executed the search warrant at their residence. Although an officer's mere presence at the scene of a search is insufficient to establish individual liability under § 1983, *Ghandi*, 747 F.2d at 352, here the agents' intent to conceal contributed to plaintiffs' impaired ability to identify them.

In this regard, we note that the Ninth Circuit has addressed this issue. In *Dubner v. City & County of San Francisco*, the plaintiff filed an unlawful arrest claim under § 1983 but could not prove that the defendants were the officers who arrested her. *Dubner*, 266 F.3d at 961. As the court explained:

> [The plaintiff] did everything she possibly could to identify the arresting officers. She obtained a copy of the arrest report and, assuming the officers listed were in fact the arresting officers, named them in her suit. . . . [The plaintiff] could reasonably assume she had named the right officers or the City would come forward with the name[s] of the officers who actually arrested her.

*Id*. at 965. Because the plaintiff had met her burden on the issue of unlawful arrest, our sister circuit held that it was appropriate to shift the burden of production onto the defendants, who were in a better position to gather information about the arrest and come forward with evidence of probable cause. *Id*. The court reasoned that shifting the burden of production "prevent[s] this exact scenario where police officers can hide behind a shield of anonymity and force plaintiffs to produce evidence that they cannot possibly acquire." *Id*. *See also Wesby v. Dist. of Columbia*, 841 F. Supp. 2d 20, 42

(D.D.C. 2012) (reasoning that "it would not be in the interest of justice to grant summary judgment to police officers who signed the arrest forms but are now unwilling to take responsibility for the arrests"); *Rauen v. City of Miami*, No. 06-21182-CIV, 2007 WL 686609 at *4 (S.D. Fla. Mar. 2, 2007) (finding dismissal improper based on plaintiffs' failure to identify the officers because "it would reward [the officers] for their uniform method of dress . . . , which makes it virtually impossible for an observer to identify the officers or departments behind each face shield").

In the present case, we express no opinion on whether our circuit should adopt the Ninth Circuit's burden-shifting approach. Instead, we leave it to the discretion of the district court on remand to decide the matter in the first instance.

## VII.

Finally, in light of our decision to reverse the judgment in favor of the federal defendants, we vacate the district court's award of costs and supersedeas bond order.

## VIII.

For these reasons, we AFFIRM the judgment in favor of Wayne County and in favor of the state and local defendants. We REVERSE the judgment regarding the federal defendants, VACATE the order of costs and supersedeas bond, and REMAND for further proceedings consistent with this opinion.