NOT RECOMMENDED FOR PUBLICATION

File Name: 14a0106n.06

No. 12-4342

UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Feb 06, 2014
DEBORAH S. HUNT, Clerk

KELLEY CRAIG-WOOD,                          )
                                            )
        Plaintiff-Appellant,                )
                                            )
                                            )   ON   APPEAL   FROM   THE
        v.                                  )   UNITED   STATES   DISTRICT
                                            )   COURT FOR THE SOUTHERN
TIME WARNER NY CABLE LLC,                    )   DISTRICT OF OHIO
                                            )
        Defendant-Appellee.                 )
                                            )

BEFORE:  COLE and GRIFFIN, Circuit Judges; and PEARSON, District Judge.[*]

        GRIFFIN, Circuit Judge.

        Plaintiff Kelley Craig-Wood, a Caucasian woman over forty years of age, alleged that her

former employer, defendant Time Warner NY Cable LLC, intentionally discriminated against

her on the basis of her race and age in violation of state and federal law.  The district court

granted summary judgment to defendant; plaintiff appealed that ruling and two discovery orders.

For the reasons that follow, we affirm.

I.[1]

---

[*]The Honorable Benita Y. Pearson, United States District Judge for the Northern District of Ohio, sitting by designation.

[1]The complete factual record in this case is over 2,000 pages long and spans several years.  However, a lengthy recitation of the entire factual and procedural history of this case is unnecessary because plaintiff appeals only isolated portions of the rulings below.  Accordingly,

Plaintiff Kelley Craig-Wood, a Caucasian woman over forty years of age, began work as a Direct Sales Representative (DSR) for defendant Time Warner NY Cable LLC in March 2008. As a DSR, plaintiff sold defendant's cable television, high-speed internet, and digital telephone services to residential customers over the phone and on a door-to-door basis. Plaintiff earned a weekly salary and commission from her sales.

Bianca Beckley, an African-American woman under forty years of age, supervised plaintiff from April 2008 to March 2009. Beckley had an unauthorized policy of reducing DSRs' vacation time for zero-sales days. On days where a DSR would go on a sales route and not make any successful sales, Beckley would count the day as a vacation day and pay the DSR as if she had taken vacation, even though the employee had worked. Beckley reduced plaintiff's vacation time under this policy only on one occasion. Beckley also placed plaintiff on an unauthorized six-month probation period for having allegedly falsified sales orders and later assigned plaintiff "unfavorable" sales routes, i.e., routes that typically produced low sales because the houses were few and travel between them was time-consuming.

In March 2009, purportedly based on the stress arising from difficult sales routes, plaintiff left work on disability leave. In October 2009, defendant's disability benefits administrator told plaintiff that she no longer qualified for disability leave and needed to return to work. By March 2010, plaintiff had not yet returned to work, and defendant terminated her employment.

Plaintiff then filed suit against defendant alleging race discrimination in violation of Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000(e), *et seq*., and the Ohio Civil Rights Act,

the following section sets forth the background facts only to the extent needed to resolve the narrow issues presented in this appeal.

Ohio Rev. Code Ann. § 4112.02, and age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* The district court determined that plaintiff had alleged four separate disparate treatment claims, each based on the conduct described above: reduction of vacation day, six-month probation, unfavorable sales routes, and termination. The court also concluded that plaintiff had alleged a hostile work environment claim, but based only on her race. The court referred the case to the magistrate judge for nondispositive pretrial matters and discovery began.

Three days before discovery closed, plaintiff moved to compel discovery on, among other things, Beckley's supervisor's personnel file and unemployment records. The magistrate judge denied the motion on April 16, 2012, concluding that plaintiff sought irrelevant materials because she had not advanced any claims against Beckley's supervisor. Plaintiff did not appeal this order to the district court.

Two months after discovery closed—and two days after defendant filed a motion for summary judgment—plaintiff filed a second motion to compel discovery. She sought, among other things, certain CDs that Colley Investigations provided to defendant as part of its investigation into the alleged unethical sales practices in plaintiff's department.[2] The magistrate judge denied plaintiff's motion, ruling it untimely because she sought materials which were not requested before the discovery cut-off date, nor mentioned in her first motion to compel. Plaintiff appealed to the district court, which affirmed on August 13, 2012.

The district court then granted defendant's motion for summary judgment. The court held that plaintiff failed to establish a prima facie case on any of her four disparate treatment

[2]Defendant hired Colley Investigations to investigate allegations of fraud and unethical sales practices in the DSR department. Colley interviewed over twenty employees, a majority of whom reported to Beckley.

claims and failed to create a genuine issue of material fact on whether her work environment was objectively hostile. Plaintiff appealed that decision, as well as the April 16, 2012, discovery order from the magistrate judge and the August 13, 2012, discovery order from the district court judge.

II.

We begin by noting that much of the district court's opinion and order granting summary judgment is unchallenged in this appeal. Plaintiff "does not claim error with regard to her AD[E]A claim[s,]" nor does she dispute the district court's holdings that her six-month probation was not an actionable "adverse employment action" or that she failed to identify any "similarly situated" employees for purposes of establishing a prima facie disparate treatment claim based on her termination. Thus, she appeals only the rulings that she (1) failed to identify any "similarly situated" employees outside the protected class who were treated more favorably with respect to Beckley's vacation day practice and route assignments, and (2) failed to create a genuine issue of material fact on whether her work environment was objectively hostile towards her race. Before we review these issues, we address the discovery disputes.

A.

Plaintiff argues that the magistrate judge erred in denying her motion to compel discovery on Beckley's supervisor on April 16, 2012. We lack jurisdiction to review this order because plaintiff did not first appeal it to the district court below. *See Stemler v. City of Florence*, 126 F.3d 856, 866 n.9 (6th Cir. 1997) (failure to appeal a magistrate judge's discovery order to the district court constitutes a waiver of that challenge on appeal to the circuit court); *see also Ambrose v. Welch*, 729 F.2d 1084, 1084 (6th Cir. 1984) (per curiam) (circuit court lacks

jurisdiction to hear an appeal of magistrate judge's order unless parties first sought review in district court). Accordingly, we cannot consider plaintiff's arguments on this matter.

B.

Next, the parties dispute whether the district court abused its discretion in denying plaintiff's motion to compel discovery on certain CDs that Colley Investigations produced as part of its investigation into the DSR department at which plaintiff worked. We review a district court's discovery rulings for an abuse of discretion. *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009). "[U]nder this standard, we will reverse only if we are firmly convinced of a mistake that affects substantial rights and amounts to more than harmless error." *Id.* (internal quotation marks and citation omitted).

The district court did not abuse its discretion in denying plaintiff discovery of the CDs because she never sought the same before the discovery deadline. As defendant points out, plaintiff had in her possession, as early as August 2011, discovery documents that identified the existence of the CDs. For whatever reason, plaintiff did not specifically seek production of those CDs until two months after discovery closed in March 2012 and two days after defendant filed its motion for summary judgment. And, even if we agree with plaintiff that she requested the CDs in her Rule 45(c) subpoena duces tecum to defendant's human resources manager, plaintiff still issued that subpoena a month-and-a-half after discovery closed. In general, a district court does not abuse its discretion by denying an untimely motion to compel that violated unambiguous discovery deadlines; such is the case here. *See Spurlock v. Whitley*, 79 F. App'x 837, 839 (6th Cir. 2003) (per curiam) (affirming denial of discovery where plaintiff had ample opportunity during discovery period to examine documents at issue); *Kalis v. Colgate–Palmolive Co.*, 231 F.3d 1049, 1058 (7th Cir. 2000) (finding no abuse of discretion in denying motion to

compel filed after discovery closed and summary judgment motion was filed); *Ginett v. Fed. Express Corp.*, 166 F.3d 1213, 1998 WL 777998, at \*5 (6th Cir. 1998) (table) (affirming denial of motion to compel where plaintiff failed to move before discovery deadline).

C.

Turning to the merits, the parties dispute whether plaintiff, for purposes of establishing a prima facie case of disparate treatment based on race, identified any "similarly situated" employees outside of the protected class who were treated more favorably with respect to Beckley's vacation day practice and route assignments. The district court held that she did not and granted summary judgment to defendant. We review de novo the district court's grant of summary judgment. *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Burley v. Gagacki*, 729 F.3d 610, 618 (6th Cir. 2013).

In the absence of direct evidence of discrimination—as is the case here—we consider disparate treatment claims under Title VII and the Ohio discrimination statutes using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). *See Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir. 2007) (Title VII); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (Ohio law). To establish a prima facie case of racial discrimination under this framework, a plaintiff must show that she (1) is a member of a protected class; (2) suffered an adverse employment action; (3) was qualified for the position; and (4) similarly situated employees outside of the protected class were treated more favorably. *Michael*, 496 F.3d at 593. After proving the existence of a prima facie case, the

burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802–03. If the defendant meets this burden, the plaintiff must then show that the defendant's articulated reason is a pretext for discrimination. *Id.*

In this case, plaintiff has failed to establish a prima facie case of disparate treatment based on Beckley's vacation pay practice and route assignments because she has no proof that Beckley treated similarly situated employees outside of her protected class more favorably. To establish that the proffered comparator employees are "similarly situated," a plaintiff must show that "he and his proposed comparators were similar in all relevant respects and that he and his proposed comparators engaged in acts of comparable seriousness." *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 751 (6th Cir. 2012) (internal citation omitted).

Regarding Beckley's vacation pay practice, plaintiff has not identified any DSRs outside of her protected class who had a zero-sales day but did not have their vacation days reduced. While she stated in her deposition that "there were several people saying, you know, [Beckley] is making us take vacation pay[,]" she has never identified who these employees were, and when squarely asked whether she knew of anyone else who had a vacation day taken away from them for a zero-sales day, plaintiff answered: "I'm not gonna be able to tell you."

The best evidence that plaintiff has is an ambiguous, double-hearsay statement from an unidentified Colley investigator who summarized an interview with African-American DSR Tarquin Carroll. After interviewing Carroll, the investigator wrote that Carroll "did not recall ever having a vacation or personal day taken from him for zero sales." Plaintiff argues that this statement "is an admission by Mr. Carroll [that] he had zero sales and had never been docked." It is no such thing.

First, it is inadmissible double hearsay because it is an out-of-court statement by an unknown Colley investigator that paraphrases an out-of-court statement by Carroll, offered to prove the truth of the matter asserted, i.e., that Carroll had a zero-sales day and did not have his vacation time reduced. *Weigel v. Baptist Hosp.*, 302 F.3d 367, 378 (6th Cir. 2002) (double hearsay cannot be considered for purposes of summary judgment). Second, the statement is not an admission "by" Carroll because a Colley investigator drafted the statement, not Carroll. Third, it is fatally ambiguous: it is unclear whether Carroll ever had a zero sales day at all, or if he did, whether he was ever subjected to the vacation day practice, or whether he was and just could not remember. Accordingly, plaintiff fails to establish a prima facie case of disparate treatment based on Beckley's vacation pay practice.

She also fails to state a prima facie case based on Beckley's "unfavorable" route assignments. Assuming arguendo that the complaint alleged a disparate treatment claim based on "unfavorable" sales routes, plaintiff again fails to identify any similarly situated employees outside of the protected class that Beckley treated more favorably. Here, plaintiff offers Tenesia Tyus as a similarly situated comparator because she is an African-American DSR under Beckley's supervision who received more favorable routes.[3] While this is true, there is no evidence that Tyus is similarly situated in "all relevant respects." *Bobo*, 665 F.3d at 751.

In reviewing whether a comparator employee is similarly situated, we consider, among other things, if they "have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell*, 964 F.2d at 583. Plaintiff fails to

---

[3]Plaintiff does not challenge the district court's holding that Carroll and Carmell Weiser were not proper comparators because plaintiff did not argue, nor offer any evidence, that they received more favorable routes.

appreciate this inquiry. For example, she offers no evidence that Tyus was similarly situated in other relevant respects such as seniority, productivity, profitability, or other non-discriminatory factors Beckley could—and most likely would—consider in determining which DSR to assign a particular sales route. That Tyus is an African-American DSR who received better routes does not make her "similarly situated" per se. Accordingly, defendant was entitled to summary judgment on all disparate treatment claims.

D.

The parties next dispute whether plaintiff created a genuine issue of material fact on whether she was subjected to a work environment that was objectively hostile towards her Caucasian race. We agree with the district court that she did not.

To establish a hostile work environment claim under Title VII, a plaintiff must prove that: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on the plaintiff's protected status; (4) the harassment affected a term, condition, or privilege of employment; and (5) the defendant employer knew or should have known about the harassing conduct but failed to take corrective or preventative actions. *Bailey v. USF Holland, Inc.*, 526 F.3d 880, 885 (6th Cir. 2008).

"Harassment" is actionable under a hostile work environment theory if "the alleged conduct constituted an unreasonably abusive or offensive work-related environment or adversely affected the employee's ability to do his or her job." *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1079 (6th Cir. 1999). This analysis contains an objective and a subjective component. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). "The environment must be of the sort that 'a reasonable person would find hostile or abusive,' and the plaintiffs themselves

must 'subjectively perceive the environment to be abusive.'" *Bailey*, 526 F.3d at 886 (quoting *Harris*, 510 U.S. at 21).

The district court held that plaintiff's hostile work environment claim failed most acutely because she did not offer any proof from which a reasonable jury could find that the complained-of conduct—even assuming some of which resulted in plaintiff being treated unfairly—constituted an "abusive" workplace that was "permeated with discriminatory intimidation, ridicule, and insult[.]" *Harris*, 510 U.S. at 21 (internal quotation marks and citation omitted). Plaintiff does not directly challenge this holding. Rather, she advances two confusing responses, neither of which provides a legitimate basis for reversal.

First, although her exact position is not entirely clear, she requests that this court abandon the subjective/objective hostility requirement based on a variety of policy reasons and allow her case to proceed to a jury solely because she subjectively perceived hostility. She essentially asks that we radically change the law because she has no claim under the current law. Plaintiff introduces this idea in her opening brief: "Once the employee has established working in a mixed Title VII protected workplace and that the employee's work has been affected, the question of the effect of the environment upon the work of the employee *must* be [a] fact question for the jury." (Emphasis added.) She elaborates further in her reply:

> In present society, racial discrimination in a mixed racial work environment must be viewed in the light of the adverse, or attempted adverse effect on the Plaintiff regardless of its facial character. The Appellant advocates that at this stage of the development of Title VII claims and remedies, objectively hostile has such a broad range of behavior dependent upon culture, race, ethnicity and nat[ional] [origin] that a showing of an adverse or attempted action by the employer *must* require the trier of fact to determine whether *any* of the objective reasons recited by the Plaintiff establish a hostile work environment.

(Emphasis added.) It is axiomatic that we cannot abandon decades of Supreme Court and Sixth Circuit precedent regarding hostile work environment claims simply because plaintiff is unable to satisfy the current evidentiary standards for such claims. Accepting plaintiff's theory essentially turns a federal jury into a national human resources department, adjudicating workplace disputes so long as a plaintiff subjectively perceives discrimination. We have long-ago rejected this theory of hostile work environment claims. *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 564 (6th Cir. 1999) (explaining that the objective and subjective tests set forth in *Harris* sufficiently prevent Title VII from expanding into a general civility code).

Second, plaintiff suggests that the district court improperly relied upon the facts of *Bailey* in determining that complained-of conduct in this case was not objectively hostile because the facts of *Bailey* were more egregious than the alleged harassment in this case. Although her exact position is (again) not entirely clear, she argues that the district court interpreted *Bailey* as setting a new "minimum threshold" to be met for purposes of establishing an objectively hostile work environment. The district court did no such thing, nor did the court in *Bailey*.

In this case, and in *Bailey*, the courts were simply reviewing hostile work environment proofs against the well-established standards for those claims. The district court properly reviewed plaintiff's proofs in this case against those in *Bailey*—a case in which the plaintiff had established a hostile work environment claim—to comparatively assess whether plaintiff had enough evidence from which a reasonable jury could find for her on this claim. The court concluded that she did not, and plaintiff does not directly challenge this holding. Accordingly, defendant was entitled to summary judgment on the hostile work environment claim.

## III.

For these reasons, we affirm the judgment of the district court.