RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0034p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ANDREA J. MOSBY-MEACHEM,

*Plaintiff-Appellee,*

*v.*

MEMPHIS LIGHT, GAS & WATER DIVISION,

*Defendant-Appellant.*

┐

No. 17-5483

┘

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:14-cv-02156—John Thomas Fowlkes, Jr., District Judge.

Argued: January 25, 2018

Decided and Filed: February 21, 2018

Before: GIBBONS, GUY, and COOK, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Michael D. Tauer, GLANKLER BROWN, PLLC, Memphis, Tennessee, for Appellant. Adam W. Hansen, APOLLO LAW LLC, Minneapolis, Minnesota, for Appellee. **ON BRIEF:** Michael D. Tauer, Saul C. Belz, Miska L. Shaw, GLANKLER BROWN, PLLC, Memphis, Tennessee, for Appellant. Adam W. Hansen, APOLLO LAW LLC, Minneapolis, Minnesota, William B. Ryan, Janelle Osowski, DONATI LAW FIRM LLP, Memphis, Tennessee, for Appellee.

---

**OPINION**

---

JULIA SMITH GIBBONS, Circuit Judge.    Andrea Mosby-Meachem, an in-house attorney for Memphis Light, Gas & Water Division, was denied a request to work from home for ten weeks while she was on bedrest due to complications from pregnancy.  Following trial, a jury found in favor of Mosby-Meachem on her claim for disability discrimination and awarded her compensatory damages.  The district court also granted Mosby-Meachem's motion for equitable relief and awarded her backpay for the period in which MLG&W did not permit her to telework.  MLG&W moved for judgment as a matter of law or, in the alternative, a new trial, asserting that the evidence produced at trial and binding Sixth Circuit precedent precluded any reasonable jury from determining that Mosby-Meachem was a qualified individual while on bedrest because in-person attendance was an essential function of her job.  The district court denied the motion and MLG&W appealed both the denial of its motion and the award of equitable relief.  Because Mosby-Meachem produced sufficient evidence at trial for a reasonable jury to conclude that in-person attendance was not an essential function of her job for the 10-week period in which she requested to telework and the Sixth Circuit precedent relied upon by MLG&W is materially distinguishable from the facts of this case, we affirm the orders of the district court.

I.

Andrea Mosby-Meachem has worked as an in-house attorney for Memphis Light, Gas & Water Division ("MLG&W") since 2005.  Her position title at MLG&W was Attorney 3.[1]

---

[1]The Job Description for the Attorney 3 position lists "essential functions" as follows:

1.  Perform senior level legal assistance to prosecute and defend, in accordance with the Vice President & General Counsel, all suits by or against the Division; and provide analysis and counsel on legal, policy, compliance issues, and actual or anticipated lawsuits.

2.  Review and evaluate investigations; based on laws or facts, determine the method of investigation, its extent, legal sufficiency of evidence, applicable laws and the basis and method of settlement. If settlement is not indicated, determine method of defense at law or equity in the court.

3.  Perform legal research on pending cases and current problems.

4.  Render legal services and opinions of rights, obligations and privileges for Division employees as requested.

As an Attorney 3, Mosby-Meachem's work focused primarily on the areas of labor, employment, and workers' compensation. Mosby-Meachem, however, never participated in a trial during her eight years with MLG&W prior to the initiation of this litigation.

In 2008, Cheryl Patterson was hired as the vice president and general counsel for MLG&W, becoming Mosby-Meachem's supervisor. On March 14, 2011, Patterson sent an email to all lawyers in the legal department outlining her policy regarding the hours the attorneys spent in the office. In this email, she stated:

> Please be reminded that office hours for the Legal Department are 8:30 a.m. - 5:00 p.m. Monday through Friday. All employees, including the lawyers, are expected to be at work and devoting their time and attention to Division business during those hours. As professionals, you are expected to set a good example for the support staff by being in the office on time and staying at work until the end of the day. If you anticipate arriving after 8:30 a.m., please contact the office to inform me of the situation. Likewise, if you have a meeting or hearing in the downtown area that ends before 5:00, you are expected to return to the office to complete the day's work.

DE 44-14, Attendance Policy Email, Page ID 433. However, MLG&W did not maintain a formal written telecommuting policy at that time, and in practice, employees often telecommuted. Indeed, on one occasion in 2012, Mosby-Meachem herself was permitted to work from home for two weeks while she was recovering from neck surgery, during which time she appears to have adequately performed her duties to the satisfaction of MLG&W.

---

5. Draft, negotiate and prepare contracts and other legal documents; review and approve proposed contracts and legal documents.

6. Negotiate, in accordance with the Vice President & General Counsel, insurance representatives, lawyers, etc. regarding settlements.

7. Interview and take depositions of witnesses; arrange for and conduct pre-trial conferences; and keep Division up to date on new/revised laws, compliance standards, and regulations.

8. Represent the Division and try cases in court; and may act as agent of the Division in various transactions.

9. Supervise, direct and train assigned employees such as: paralegals, medical services, support staff, and/or legal students.

10. Perform other duties as directed.

DE 44-11, Job Description, Page ID 404. The Job Description also describes the work environment as: "Works inside and outside. Subject to hazards of investigative work and stress associated with heavy caseloads, interaction with people, sometimes in an adversarial climate, and changing/unpredictable events." *Id.*

On January 2, 2013, during her 23rd week of pregnancy, Mosby-Meachem's doctors discovered a problem requiring her hospitalization. Prior to this occasion, Mosby-Meachem had already experienced problematic pregnancies and had suffered three miscarriages. The next day, on January 3, Mosby-Meachem contacted MLG&W's medical service coordinator, Cynthia White, and informed White of her condition before undergoing surgery later that day. Following surgery, Mosby-Meachem's doctors placed her on "modified bed rest" for approximately ten weeks, during which time she was restricted from engaging in prolonged standing or sitting and from lifting heavy objects. Upon receiving these instructions from her doctors, Mosby-Meachem called Patterson and informed Patterson of her diagnosis.

On January 7, 2013, Mosby-Meachem made an official accommodation request that she be permitted to work from a bed either within the hospital or within her home for ten weeks. Two days later, on January 9, she submitted documentation supporting her request, including a letter from Dr. Shannon Malone stating "[i]t will be okay for [Mosby-Meachem] to work from the hospital or home." CA6 R. 38, Malone Letter, at 61. On January 15, 2013, MLG&W assembled an ADA Committee consisting of Eric Conway, Steve Day, and Rutha Griffin, who along with Vernica Davis and Patterson,[2] conducted a telephonic process meeting with Mosby-Meachem. During the process meeting, Mosby-Meachem was asked whether she could perform each of the essential functions of her job remotely, which she answered in the affirmative. Despite Mosby-Meachem's assurances, the ADA Committee denied Mosby-Meachem's accommodation request on January 18, and, in a letter dated January 30, 2013, explained that the denial was based on the determination that physical presence was an essential function of Mosby-Meachem's job, and teleworking created concerns about maintaining confidentiality. From the time of her request on January 7 until she received the denial letter on January 30, Mosby-Meachem continued to perform her work remotely, and no one from MLG&W ever told her to stop working during this time.

---

[2]Conway is MLG&W's Human Resources Compliance Coordinator; Day is its Manager of Labor and Employee Relations; Griffin is its Manager of Employment Services; and Davis is its Medical Services Coordinator and nurse.

Mosby-Meachem first appealed the denial on February 2, 2013 via email. When that appeal was denied on February 19, she again appealed on February 21, which appears to have again been denied. Following her ten weeks of restriction, Mosby-Meachem returned to work on April 1, 2013, and she continued to work up until her baby was born on April 14, 2013. During the time between January 3 and her return to work on April 1, Mosby-Meachem initially received sick leave under the FMLA for four weeks and then subsequently received short-term disability for the remainder of the period.

From February 26, 2013, until the end of the accommodation period, Mosby-Meachem's license to practice law was suspended for failure to pay the annual registration fee. Mosby-Meachem, however, claims that she was unaware of the suspension until receiving a June 28, 2013 letter from Patterson about the issue, and she paid the fee the next day. Despite the suspension, Mosby-Meachem was fully compensated upon her return to work in April 2013.

Mosby-Meachem filed suit in state court on December 30, 2013, and MLG&W removed the action to federal court on March 5, 2014. In Mosby-Meachem's amended complaint, she brought claims for pregnancy discrimination in violation of the Tennessee Human Rights Act and failure to accommodate and retaliation in violation of the Americans with Disabilities Act. MLG&W moved for summary judgment following discovery, but the district court denied the motion and the case proceeded to trial. MLG&W moved for judgment as a matter of law at the close of Mosby-Meachem's proof, and the district court took the matter under advisement. The jury returned a verdict for Mosby-Meachem on her claim of disability discrimination and awarded her $92,000.00 in compensatory damages. The jury returned a verdict for MLG&W on Mosby-Meachem's claims of pregnancy discrimination and retaliation.

On September 30, 2015, MLG&W renewed its motion for judgment as a matter of law or, in the alternative, for a new trial. That same day, Mosby-Meachem moved for an award of equitable relief based on lost pay and her forced use of sick leave time, which MLG&W opposed on the grounds that Mosby-Meachem was suspended from the practice of law during a portion of this time and was thus legally disqualified from doing her job. The district court denied MLG&W's renewed motion on March 29, 2017. In the same order, the district court also

granted Mosby-Meachem's request for an award of equitable relief. MLG&W subsequently appealed those decisions to this Court.

## II.

Although this Court reviews the denial of a renewed motion for judgment as a matter of law de novo, *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 405 (6th Cir. 2006), it nevertheless must "apply the same deferential standard as the district court." *Arnold v. Wilder*, 657 F.3d 353, 363 (6th Cir. 2011).

The Federal Rules of Civil Procedure authorize courts to enter judgment as a matter of law against a plaintiff upon finding that "a reasonable jury would not have a legally sufficient evidentiary basis to find" in his or her favor. FED. R. CIV. P. 50. In making such a determination, the courts must view the evidence in the light most favorable to the nonmovant, granting all reasonable inferences in their favor. *Garrison v. Cassens Transp. Co.*, 334 F.3d 528, 537 (6th Cir. 2003) (citing *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1023 (6th Cir.), *cert. denied*, 510 U.S. 861 (1993)). The court should "not weigh the evidence, evaluate the credibility of the witnesses, or substitute [its] judgment for that of the jury." *Wehr v. Ryan's Family Steak Houses, Inc.*, 49 F.3d 1150, 1152 (6th Cir. 1995). "[T]he verdict should not be considered unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable." *J.C. Wyckoff & Assocs. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1487 (6th Cir. 1991). A motion for judgment as a matter of law should be granted "only if reasonable minds could not come to a conclusion other than one favoring the movant." *Garrison*, 334 F.3d at 537–38 (quoting *K & T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 176 (6th Cir. 1996)).

This Court "review[s] a denial of a motion for a new trial for an abuse of discretion . . . ." *Anchor v. O'Toole*, 94 F.3d 1014, 1021 (6th Cir. 1996) (citing *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 171 (6th Cir. 1993)). Likewise, "[t]he grant or denial of equitable relief is reviewed for an abuse of discretion." *Id.* at 1025 (citing *Schwartz v. Gregori*, 45 F.3d 1017, 1023 (6th Cir. 1995)). "The phrase, 'abuse of discretion,' is generally regarded as a 'definite and firm conviction [on the part of the reviewing court] that the court below committed a clear error

of judgment in the conclusion it reached upon a weighing of the relevant factors.'" *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1045 (6th Cir. 1996) (quoting *Balani v. Immigration and Naturalization Serv.*, 669 F.2d 1157, 1160 (6th Cir. 1982)).

## III.

MLG&W presents three arguments on appeal. Its first and primary argument is that it was entitled to judgment as a matter of law because the jury did not have a legally sufficient basis to find that Mosby-Meachem could have effectively performed all the essential functions of her job with her requested 10-week teleworking accommodation. Its second related argument is that this lack of evidence, as well as the unfair prejudice resulting from improper comments about Mosby-Meachem's ADA expertise during trial, the rejection of its preferred jury verdict form, and the exclusion of certain evidence alternatively entitles it to a new trial. Finally, MLG&W argues that Mosby-Meachem should not receive backpay for the period of time during which her law license was administratively suspended.

For the reasons addressed below, we find all of MLG&W's arguments unpersuasive and affirm the district court's orders.

## A.

In order to establish a prima facie case of disability discrimination under the ADA for failure to accommodate, Mosby-Meachem must show that: "(1) she is disabled within the meaning of the Act; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) her employer knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the employer failed to provide the necessary accommodation." *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982–83 (6th Cir. 2011) (citing *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004)). "Once a plaintiff establishes a prima facie case, the burden shifts to the employer to demonstrate that any particular accommodation would impose an undue hardship on the employer." *Id.* at 983 (citing *DiCarlo*, 358 F.3d at 419).

MLG&W contends that it is entitled to judgment as a matter of law because Mosby-Meachem's requested accommodation to telework was "*per se* unreasonable" as it removed several essential functions of her job that could only be performed in person; therefore, she failed to establish a prima facie case of discrimination. Specifically, MLG&W argues that Mosby-Meachem's own testimony, the written description of the Attorney 3 position, and testimony from former MLG&W employees conclusively established that physical presence was an essential function of her job. Therefore, this evidence, along with this Court's prior precedent *E.E.O.C. v. Ford Motor Co.*, which stated that "[r]egular, in-person attendance is an essential function—and a prerequisite to essential functions—of most jobs, especially the interactive ones," precludes a reasonable jury from finding that Mosby-Meachem was "otherwise qualified" from performing her job while she was on bedrest. 782 F.3d 753, 762–63 (6th Cir. 2015) (en banc). However, while MLG&W is correct that there is some evidence showing that in-person attendance was an essential function of Mosby-Meachem's job, Mosby-Meachem proffered other evidence at trial, including testimony from coworkers, from which a jury could reasonably conclude that she was otherwise qualified to perform her job from home for ten weeks without being physically present in the office.

To be "otherwise qualified" for the job, the employee bears the burden of showing she can perform the "essential functions" of the job, with or without accommodation. 42 U.S.C. § 12111(8); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 456 (6th Cir. 2004). "A job function is essential if its removal would fundamentally alter the position." *Kiphart v. Saturn Corp.*, 251 F.3d 573, 584 (6th Cir. 2001) (quotation marks and citations omitted).

Several pieces of evidence produced at trial do support a finding that in-person attendance was an essential function of Mosby-Meachem's job. This evidence includes the enumerated list of essential functions in the Attorney 3 job description and Mosby-Meachem's testimony under oath that the first nine of these functions were in fact essential—although she also testified that they could be performed remotely. 29 C.F.R. § 1630.2(n)(3)(ii) ("Evidence of whether a particular function is essential includes . . . [w]ritten job descriptions. . ."). Several of these functions, especially "7. Interview and take depositions of witnesses," "8. Represent [MLG&W] and try cases in court," and "9. Supervise, direct and train assigned employees" all

appear to inherently require Mosby-Meachem's in-person participation.  *See* DE 44-11, Job Description, Page ID 404.  Additionally, two former Attorney 3s testified about the need to be physically present to perform the job, especially for "call-outs," when an emergency required a physical appearance.  29 C.F.R. § 1630.2(n)(3)(vi) ("Evidence of whether a particular function is essential includes . . . [t]he work experience of past incumbents in the job . . .").

Nevertheless, under the deference that this Court affords a jury verdict, *see Garrison*, 334 F.3d at 537, Mosby-Meachem presented sufficient evidence supporting a finding that she could perform all the essential functions of her job remotely for ten weeks.  For example, several MLG&W employees as well as outside counsel who worked with Mosby-Meachem testified that they felt she could perform all essential functions during the 10-week period working from home.  *See* 29 C.F.R. § 1630.2(n)(3)(vii) ("Evidence of whether a particular function is essential includes . . . [t]he current work experience of incumbents in similar jobs . . .").  Conway testified that he "d[id]n't think it would be a problem" for Mosby-Meachem to work from home. DE 124, Trial Tr., Conway Direct, Page ID 1649.  Davis similarly testified that she thought Mosby-Meachem could effectively perform her work from home.  Further, Imad Abdullah, an outside counsel with whom Mosby-Meachem worked closely, stated that he believed she could have worked effectively from home.  And another outside attorney, Sean Hunt, also stated that he told Patterson that Mosby-Meachem could "take[] care of" her duties and that she "[could] do this from her home."  DE 127, Trial Tr., Hunt Direct, Page ID 2202.

Mosby-Meachem also presented evidence that undermined the strength of MLG&W's evidence, including uncontested testimony that Mosby-Meachem had never "tr[ied] cases in court" or "t[aken] depositions of witnesses"—two functions listed in the Attorney 3 job description—during the entire eight years she had worked for MLG&W.  DE 125, Trial Tr., Patterson Direct, Page ID 1850; DE 128, Trial Tr., Mosby-Meachem Testimony, Page ID 2273 (direct), 2405 (cross); DE 129, Trial Tr., Mosby-Meachem Cross, Page ID 2450; 29 C.F.R. § 1630.2(n)(3)(iii) ("Evidence of whether a particular function is essential includes . . . [t]he amount of time spent on the job performing the function . . .").  The jury also heard evidence that the job description on which MLG&W relied was based on a 20-year-old questionnaire that did not reflect changes in the job that have resulted from technological advancements since that time,

rather than a 2010 questionnaire Mosby-Meachem herself had completed prior to any of the events in this litigation.  Given all the evidence presented by Mosby-Meachem that both undermined MLG&W's evidence and independently supported a finding that she could perform the essential functions of her job remotely for ten weeks, a rational jury could find that she was a qualified employee and that working remotely for ten weeks was a reasonable accommodation.

Further, this Court's opinions in *Ford* and the recent case *Williams v. AT&T Mobility Services LLC*, 847 F.3d 384 (6th Cir. 2017) do not preclude such a finding because both cases are materially distinguishable from the one presented here.  In *Ford*, we granted summary judgment to the employer, finding that "regular and predictable attendance" at work on-site was an essential function of the plaintiff's employment.  782 F.3d at 763.  The plaintiff in *Ford*, however, had an extensive history of poor performance and high absenteeism, some of which stemmed from her Irritable Bowel Syndrome, requiring other employees to cover for her.  *Id.* at 758–59.  Ford attempted to accommodate the plaintiff, but her poor performance and absenteeism eventually led to her termination.  *Id.* at 759–60.  Here, unlike the plaintiff in *Ford*, Mosby-Meachem had performed her duties remotely in the past without any attendance issues or decline in work product.  Further, Mosby-Meachem's requested accommodation—teleworking for a limited 10-week period—was significantly different from that of the plaintiff in *Ford*, who sought to work off-site up to four days a week indefinitely and on an indeterminate schedule.  *Id.* at 759.

*Williams* is similarly distinguishable.  In that case, this Court held that attendance was an essential job function for a call center employee.  *See Williams*, 847 F.3d at 392–93.  But there, the plaintiff had to be physically present at her work station and logged into the computer to receive customer service calls; otherwise those calls would automatically be routed to another employee.  *Id.* at 387–88.  Additionally, as noted by the court, "a person like Williams who reacts to random customer calls with anxiety attacks that require her to log off of her workstation is not capable of performing the essential job functions of an AT&T CSR."  *Id.* at 398.  Unlike the plaintiff in *Williams*, Mosby-Meachem's job was not tied to her office desk, and she had already demonstrated her ability to work remotely without issue.  Further, her disability—and corresponding accommodation—was for a limited time rather than an indefinite period.

Therefore, the finding that the plaintiff in *Williams* was not qualified to do her job was premised on facts that are dramatically different from the ones in the present case.

In *Ford*, we observed that in-person attendance is an essential function of "most jobs," 782 F.3d at 762–63, but we expressly did not preclude teleworking in all cases, *id.* at 764 ("[E]mployers [must] make reasonable accommodations for its employees, including allowing telecommuting under the proper circumstances."). Further, determining what constitutes an essential function "is highly fact specific." *Hoskins v. Oakland Cty. Sheriff's Dep't*, 227 F.3d 719, 726 (6th Cir. 2000). Accordingly, because the *Ford* and *Williams* cases leave open the possibility of teleworking as a reasonable accommodation, particularly for a finite period of time, a jury could have reasonably concluded from the evidence presented at trial that Mosby-Meachem could perform all the essential functions of her job remotely for ten weeks.

MLG&W contends that even if Mosby-Meachem's requested accommodation was reasonable, it should nevertheless be granted judgment as a matter of law because it offered Mosby-Meachem an alternative reasonable accommodation in the form of sick leave and short-term disability. Because MLG&W never raised this argument in their Rule 50(a) motion, however, it is waived on appeal. *Sykes v. Anderson*, 625 F.3d 294, 304 (6th Cir. 2010) ("[An] issue is waived on appeal if not pressed in a Rule 50(a) motion.") (quoting *Parker v. Gerrish*, 547 F.3d 1, 12 (1st Cir. 2008)).

Moreover, "[o]nce the employee requests an accommodation, the employer has a duty to engage in an 'interactive process' to 'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.'" *Melange v. City of Ctr. Line*, 482 F. App'x 81, 84–85 (6th Cir. 2012) (quoting *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007)); *see also* 29 C.F.R. § 1630.2(o)(3) ("To determine the appropriate reasonable accommodation [for a given employee,] it may be necessary for the [employer] to initiate an informal, interactive process with the [employee]."). At trial, Mosby-Meachem presented evidence that MLG&W did not in fact engage in an interactive process, but rather had already determined what accommodation it was willing to offer before ever speaking with Mosby-Meachem. Such evidence included Conway stating, before the interactive process

began, that MLG&W's president "sa[id] nobody can telecommute" and that Patterson had "said no already." DE 124, Trial Tr., Conway Direct, Page ID 1636–38. Conway also acknowledged that the ADA Committee understood its orders as "staying firm on the telecommuting mandate from [MLG&W president] Jerry Collins" that "nobody can telecommute . . . no matter what the circumstances." *Id.*; DE 125, Trial Tr., Conway Redirect, Page ID 1829–30. Given this evidence, the jury could have reasonably concluded that MLG&W did not actually engage in an interactive process and that its proposed accommodation was not reasonable. *See Rorrer v. City of Stow*, 743 F.3d 1025, 1041 (6th Cir. 2014) ("[F]ailure to engage in the interactive process is . . . an independent violation of the ADA if the plaintiff establishes a prima facie showing that he proposed a reasonable accommodation."). Accordingly, the district court did not err in denying MLG&W's motion for judgment as a matter of law.

## B.

MLG&W alternatively asks this Court to find that the district court erred in denying its request for a new trial. But its arguments on this point are unavailing.

Federal Rule of Civil Procedure 59 provides that after a jury trial, a new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). We have interpreted Rule 59 to mean that "a new trial is warranted when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.*, the proceedings being influenced by prejudice or bias." *Holmes*, 78 F.3d at 1045–46. "[I]n finding that a jury's verdict was against the weight of the evidence, the judge must, 'to some extent at least, substitute[] his judgment of the facts and the credibility of the witnesses for that of the jury.'" *Miller v. Alldata Corp.*, 14 F. App'x 457, 464 (6th Cir. 2001) (quoting *Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir. 1967)).

In addition to asserting that its arguments for judgment as a matter of law also entitle it to a new trial—in other words, that the verdict was against the weight of the evidence—MLG&W argues that the trial was otherwise unfair because the jury was prejudiced by Mosby-Meachem "flaunting" her expertise in ADA matters, the jury verdict form did not properly frame the

relevant analysis, and the district court erroneously excluded evidence regarding the lack of financial hardship Mosby-Meachem suffered as a result of being forced to take paid leave. None of these arguments are persuasive.

First, as explained above, there was significant evidence presented at trial supporting the jury's finding of disability discrimination. *See supra* § III.A. Therefore, the district court did not abuse its discretion in finding that the weight of the evidence was not so against the verdict that a new trial was warranted. *See CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 591 (6th Cir. 2015) ("We will uphold the verdict reached by the jury 'if it was one which the jury reasonably could have reached; we cannot set it aside simply because we think another result is more justified.'") (quoting *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 534 (6th Cir. 2014)).

MLG&W's other arguments are equally without merit. First, the references by plaintiff's counsel to Mosby-Meachem's expertise on the ADA—which MLG&W's counsel also referenced at trial—do not appear to be particularly prejudicial, and some level of argument regarding Mosby-Meachem's expertise was required in order for Mosby-Meachem to prove that she was qualified to perform her job. *See DiCarlo,* 358 F.3d at 418 (the second element of a prima facie case of disability discrimination under the ADA for failure to accommodate is that the plaintiff is otherwise qualified for the position). Further, district courts are granted "a great deal of discretion" in determining whether a counsel's comments are so prejudicial as to require a new trial. *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756 (6th Cir. 1980) (quoting *Harris v. Zurich Ins. Co.*, 527 F.2d 528, 531 (8th Cir. 1975)). Moreover, MLG&W does not appear to have ever objected to these comments at trial, raising the degree of prejudice required to demonstrate the appropriateness of a new trial. *See Balsley v. LFP, Inc.*, 691 F.3d 747, 761–62 (6th Cir. 2012) ("The failure to object to the allegedly prejudicial comments at trial 'raise[s] the degree of prejudice which must be demonstrated in order to get a new trial on appeal.") (quoting *Strickland v. Owens Corning*, 142 F.3d 353, 358 (6th Cir. 1998)). Therefore, the district court did not abuse its discretion in rejecting this argument.

Second, contrary to MLG&W's contention, there is nothing misleading or confusing about the jury verdict form. In fact, MLG&W does not actually point to any specific flaw in the form but rather objects that it was not as good as the form it proposed for submission to the jury. The fact that the jury did not receive MLG&W's preferred form, in the absence of any allegations that the form it did receive contained errors, however, does not show the proceedings were "influenced by prejudice or bias," causing the jury to reach a "seriously erroneous result."

Finally, MLG&W has not shown any unfair prejudice resulting from its inability to present evidence that its denial of an accommodation did not impose a financial hardship on Mosby-Meachem. The existence, or lack thereof, of a financial hardship on the plaintiff—as opposed to the employer—is not a relevant factor in assessing the reasonableness of an accommodation. *See Johnson*, 443 F. App'x at 983–84. Therefore, the fact that such evidence was not introduced to the jury does not indicate the jury reached a "seriously erroneous result."

Accordingly, we affirm the district court's denial of MLG&W's request for a new trial.

C.

The district court granted Mosby-Meachem's request for equitable relief and awarded her $18,184.32 in backpay and the reinstatement of her leave benefits. MLG&W's sole challenge to this award is premised on its argument that because it would have been the unauthorized practice of law for Mosby-Meachem to have performed her job while her license was suspended, she was not "qualified" for her job, and therefore, not entitled to receive backpay. This argument, however, is without merit.

The ADA incorporates the procedures and remedies available under Title VII, including backpay under 42 U.S.C. § 2000e-5(g). *See* 42 U.S.C. § 12117(a). "[I]n the absence of exceptional circumstances, backpay should always be awarded when a Title VII violation is found." *Rasimas v. Michigan Dep't of Mental Health*, 714 F.2d 614, 626 (6th Cir. 1983). "Sick leave, vacation pay, pension benefits and other fringe benefits the claimant would have received but for discrimination should also be awarded." *Id.*

As noted by the district court, it is undisputed that neither party was aware that Mosby-Meachem's law license was suspended during the relevant time frame and that—had MLG&W not denied her requested accommodation—Mosby-Meachem would have received her full pay for work performed during this time. Indeed, Mosby-Meachem returned to work and received her full pay for approximately two weeks in April 2013 while her license was still suspended. Furthermore, the possible unlicensed practice of law is an issue for the Tennessee Bar, not this Court, and the appropriate remedy would be discipline imposed by that body, not disgorgement of Mosby-Meachem's salary to her employer. Accordingly, the district court did not abuse its discretion in awarding Mosby-Meachem backpay for the time during which her law license was administratively suspended.

## VI.

For the above reasons, we affirm the orders of the district court denying MLG&W's motion for judgment as a matter of law or a new trial and awarding Mosby-Meachem equitable relief.