**NOT RECOMMENDED FOR PUBLICATION**
File Name: 18a0590n.06

**No. 18-5404**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| SPE GO HOLDINGS, INC., | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | Nov 27, 2018 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| W&O CONSTRUCTION, INC., | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| Defendant-Appellant | ) | DISTRICT OF TENNESSEE |
| | ) | |
| CITY OF SPRING HILL, TENNESSEE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

BEFORE: COLE, Chief Judge, GRIFFIN and KETHLEDGE, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant W&O Construction, Inc. (W&O) appeals from the district court's denial of its motion for judgment as a matter of law, which it renewed after a jury verdict in plaintiff's favor. Because plaintiff presented sufficient evidence on which a reasonable jury could rely to find that W&O breached the contract, we affirm the district court's judgment.

I.

This diversity-jurisdiction lawsuit arises from a construction contract between W&O and co-defendant the City of Spring Hill (Spring Hill). From 2009 until 2015, and through a subsidiary, Plaintiff SPE GO Holdings, Inc. (SPE GO) owned and operated King's Creek Golf Course. The course held an "Arnold Palmer Signature" designation (named after professional golf legend

Arnold Palmer, who originally designed the course).  The designation identified King's Creek as an elite, well-maintained golf course, but this designation could be lost if the course changed design or was not maintained at a high level.

In 2014, Spring Hill purchased an easement from SPE GO to extend a sewer line through the middle of King's Creek.  In exchange for a payment of $199,000, SPE GO granted Spring Hill a 20-foot-wide permanent easement "for the purpose of constructing, operating, maintaining, repairing, replacing and inspecting [a] proposed gravity sewer line."  In the easement purchase agreement, Spring Hill promised "to require its agents and contractors to protect and restore [King's Creek] to a condition similar or equal to that existing at the commencement of construction."  And through email discussions, SPE GO conveyed to Spring Hill the need for the project to be completed before spring, when the golf course's business would begin to pick up for the golf season.

Shortly thereafter, Spring Hill began the bid process for the project, receiving a total of five bids.  W&O submitted the lowest bid and was granted the job.  The contract between W&O and Spring Hill provided in part that W&O would build a sewer-line extension running through King's Creek in exchange for approximately $3.6 million.  The three phases of the contract were to be completed within 360 days (120 days for each), and the contract acknowledged that "time [was] of the essence" and, through a liquidated damages clause, gave Spring Hill the right to collect $200 per day the project was late.  King's Creek was also explicitly considered in the contract.  In a section relating to "measurement and payment," under the heading "Golf Course restoration," the parties agreed that SPE GO-approved contractors would complete all course-restoration efforts and that W&O would pay the costs.  And in an addendum later added to the contract, W&O agreed

that SPE GO had final-approval rights over any and all repairs completed on the golf course and that all repairs must be done by persons with experience in golf-course restoration.

W&O and Spring Hill signed the construction contract on October 20, 2014, and Spring Hill gave W&O approval to proceed with construction on phase 1 of the project on November 3rd. Thus, given the 120-day deadline for each phase, construction at King's Creek was scheduled to end on March 2, 2015. But W&O did not begin construction until January 2015 because the access point to the golf course, which was selected by Spring Hill and W&O in precontract negotiations, did not allow W&O to get its equipment to the excavation site. Due to the delays, Spring Hill and W&O executed one extension of the phase 1 deadline to May 4, 2015.

The nature of the sewer-line construction, which cut directly across the middle of the golf course, required King's Creek to shut down the front nine of the course for the entirety of construction. As the May 4 deadline approached, SPE GO realized that W&O was nowhere near completing phase 1. Both Spring Hill and SPE GO complained to W&O about its perceived failure to employ enough workers and use sufficient equipment to meet its deadlines. On the May 4th deadline, W&O still had "a good bit of excavation and sewer line to be laid, manholes to be put in along the way, testing to be done when the whole line was in[,] [t]he irrigation needed to be repaired and made operational again, and the restoration to the in-play area needed to be done."

The deadline came and went, but SPE GO did not act until mid-May, when it informed Spring Hill and W&O that it had hired a company called "The Turf Company" to restore the roughly five acres of in-play area of the course that were affected by the sewer project for $157,000. SPE GO hired The Turf Company in order to protect King's Creek's Arnold Palmer designation, but W&O refused to pay. Ultimately, SPE GO allowed W&O to continue working

and to perform the landscaping work on out-of-play areas, which required less precision, while The Turf Company would handle all the topsoil and sod work on in-play areas.

W&O finally completed its work on phase 1 of the project in August, six weeks after The Turf Company finished sod and landscaping work on the larger in-play area. Thus, for most of the main golf season, only half of the course at King's Creek was operable. And over the course of the relevant portion of the 2015 golf season, King's Creek made $194,247.42 less than the year prior, approximately 4800 fewer rounds were played, memberships declined, and a number of yearly golf outings had to be cancelled. In addition, SPE GO had to spend approximately $18,000 in unanticipated costs to fix the course's irrigation system and to manually water some areas of the course.

Because of all the unanticipated problems with the construction, SPE GO sued Spring Hill and W&O in federal court. Plaintiff's complaint alleged two counts against W&O: (1) breach of contract and (2) negligence. After discovery and the denial of various pretrial dispositive motions, the case went to trial before a jury. At the close of SPE GO's case in chief, W&O moved for judgment as a matter of law under Rule 50(a) of the Federal Rules of Civil Procedure. The district court denied the motion and held that SPE GO had presented sufficient evidence to submit its claims to the jury. At the conclusion of trial, the jury determined that SPE GO was a third-party beneficiary of the sewer-line contract between W&O and Spring Hill, that W&O materially breached that contract causing SPE GO's damages, and that SPE GO incurred damages of $74,738.90 from W&O's breach of contract. The jury concluded that SPE GO had not proven its negligence claim against W&O.[1]

---

[1]The jury also returned a verdict against Spring Hill in the amount of $138,508.52. That award is not challenged on appeal.

After trial, W&O filed a renewed motion for judgment as a matter of law or a new trial, pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure. It argued that SPE GO had failed to present any evidence (1) to overcome the presumption in Tennessee law that a contract is executed only for the benefit of the parties to it, or (2) that W&O had breached the contract. The district court ultimately denied W&O's motion. W&O now appeals.

II.

"[T]his Court reviews the denial of a renewed motion for judgment as a matter of law de novo, [but] must apply the same deferential standard as the district court." *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 602 (6th Cir. 2018) (internal quotation marks and citations omitted). We view the evidence in the light most favorable to the nonmovant and grant all reasonable inferences in its favor. *Garrison v. Cassens Transp. Co.*, 334 F.3d 528, 537 (6th Cir. 2003). "Judgment as a matter of law is appropriate '[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Burley v. Gagacki*, 729 F.3d 610, 621 (6th Cir. 2013) (quoting Fed. R. Civ. P. 50(a)). The decision to grant judgment as a matter of law and remove the consideration of the case from the jury should occur only when "there is a complete absence of pleading or proof on an issue material to the cause of action or when no disputed issues of fact exist such that reasonable minds would not differ." *Id.* (quoting *Jackson v. Quanex Corp.*, 191 F.3d 647, 657 (6th Cir. 1999)).[2]

---

[2]To the extent that W&O also appeals the district court's denial of its motion for new trial, it has abandoned that issue on appeal. The words "new trial" appear only six times in its brief, all in either the standard of review or conclusion sections. And at no point does W&O satisfactorily argue that the jury "reached a seriously erroneous result as evidenced by (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias," *Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 405 (6th Cir. 2006), as required to show

III.

On appeal, W&O re-asserts its challenge to the district court's denial of its motion for judgment as a matter of law on numerous grounds, all of which fail for essentially the same reasons—our general deference to jury verdicts and W&O's failure to show any fundamental defects in the case presented to the jury. We address each of its contentions in turn.

A.

W&O first argues that the district court erred in denying its motion for judgment as a matter of law because no reasonable jury could have determined that SPE GO was a third-party beneficiary of the sewer construction contract. W&O also contends that the district court erred in instructing the jury to determine whether SPE GO was a third-party beneficiary of the construction contract between Spring Hill and W&O because, under Tennessee law, which controls in this diversity case, *see State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), that is a legal question for the judge, not a factual issue left to the jury.

This claim fails for two reasons. First, as noted by SPE GO, Tennessee courts allow the third-party-beneficiary question to pass to the jury in some cases. *See Koontz v. Bayless*, No. 03A01-9603-CV-00077, 1996 WL 393929, at *2 (Tenn. Ct. App. July 16, 1996) ("There is material evidence to support the jury's verdict that plaintiff was a third party beneficiary[.]").

Second, any error in sending this question to the jury was harmless because the jury correctly answered it. *See Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 274 (6th Cir. 2009) ("[W]e will not set aside a jury verdict on the basis of a technically faulty jury instruction when the error is harmless."). Under Tennessee law, contracts are presumed to be

---

entitlement to a new trial. Thus, W&O has abandoned its claim for a new trial, and we will not address it. *See Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1063 (6th Cir. 2014).

executed for the benefit of the parties to the contract, not others. *Owner-Operator Indep. Drivers Ass'n, Inc. v. Concord EFS, Inc.*, 59 S.W.3d 63, 68 (Tenn. 2001). But this general rule gives way to "an exception when the contracting parties express an intent that the benefits of the contract flow to a third party." *Id.* It is the intent of the contracting parties that is important; mere incidental beneficiaries cannot enforce any benefits under the contract. *See, e.g.*, *Willard v. Claborn*, 419 S.W.2d 168, 170 (Tenn. 1967). In determining whether a third-party is an intended beneficiary, the Tennessee Supreme Court has adopted the following three-part test:

> A third party is an intended third-party beneficiary of a contract, and thus is entitled to enforce the contract's terms, if
>
> > (1) The parties to the contract have not otherwise agreed;
> >
> > (2) Recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties; and
> >
> > (3) The terms of the contract or the circumstances surrounding performance indicate that either:
> >
> > > (a) the performance of the promise will satisfy an obligation or discharge a duty owed by the promisee to the beneficiary; or
> > >
> > > (b) the promisee intends to give the beneficiary the benefit of the promised performance.

*Concord EFS, Inc*., 59 S.W.3d at 70.

Under this test, SPE GO was a third-party beneficiary of the construction contract. To begin, W&O points to no agreement with Spring Hill to preclude third-party beneficiaries, i.e., there is no "expression of intent by the parties to reserve to themselves the benefits of the contract." *Id*. Next, because the completion of the sewer pipeline required SPE GO's cooperation to build and repair the pipe as it crossed King's Creek golf course, recognizing the benefit to SPE GO was necessary to effectuate W&O's and Spring Hill's intent—without the benefits to SPE GO, the agreement never would have happened. *Id*.

Finally, the terms of the contract and the circumstances surrounding the construction establish that SPE GO could be deemed a "creditor beneficiary" under Tennessee law. *See id*. at 71. In the easement agreement, Spring Hill promised SPE GO that it would "protect and restore [King's Creek] to a condition similar or equal to that existing at the commencement of construction." And W&O's performance of the repairs would satisfy that obligation. In other words, W&O's "performance of the promise . . . satisf[ied] an obligation . . . owed by the promisee [Spring Hill] to the beneficiary [SPE GO]." *See id*. at 70. And the construction contract explicitly provided for the work that SPE GO claims was not completed:

> Restoration of the golf course shall include all necessary work such as soils, turf, irrigation, sand traps, cart paths, tee boxes, utilities, and any other components disturbed by the construction of the gravity sewer line. This work shall be performed by King's Creek Golf Course approved contractors which are familiar with all of the turf and irigation [sic] systems of the golf course. The contractor shall contact the golf course prior to his bid and secure costs from the approved contractors which will be performing the work. This work shall be paid for at the lump sum bid cost for all items necessary to obtain the golf course approval of such work. The contactor shall also be aware that follow-up touch up work will be required after the project is completed and full settlement has occurred.

Addendum number one to the construction contract also laid out with more explicit detail exactly what W&O was required to do to bring King's Creek back up to par. The explicit reference to the golf-course repair in the contract and addendum thus distinguishes this case from the Tennessee cases cited by W&O. *See Oman Constr. Co. v. Tenn. C. Ry. Co.*, 370 S.W.2d 563, 572 (Tenn. 1963); *Rutherford Cty. v. City of Murfreesboro*, 304 S.W.2d 635, 637 (Tenn. 1957).

In any event, this was not a case where there was a complete absence of proof on whether SPE GO was a third-party beneficiary. *Burley*, 729 F.3d at 621. The jury was free to rely on the evidence presented on that issue and to come to the conclusion it did. *Id*. The district court did not err in denying W&O's motions for judgment as a matter of law or new trial on the third-party-beneficiary issue.

B.

W&O next argues that judgment as a matter of law was proper because the remedy SPE GO sought went beyond the remedies provided by the contract. In short, W&O argues that the contract's $200-per-day liquidated-damages clause is the only way SPE GO could be compensated for the delay. This argument is without merit.

Under Tennessee law, a third-party beneficiary may enforce a contract. *Concord EFS, Inc.*, 59 S.W.3d at 68. And, as in most jurisdictions, the elements of a Tennessee breach-of-contract claim are (1) the existence of a valid contract, (2) a deficiency in the performance of the contract amounting to a breach of the agreement, and (3) damages because of the breach. *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011). The construction contract explicitly required W&O to restore the golf course to its preconstruction condition, "includ[ing] all necessary work such as soils, turf, irrigation, sand traps, cart paths, tee boxes, utilities, and any other components disturbed by the construction of the gravity sewer line." SPE GO had both the right to final approval of the work and the right to approve any contractors to perform the repairs. Furthermore, the contract required W&O to complete its work on the course by May 4th. When it was clear that W&O could not perform its duties by the contract's deadline, SPE GO then hired a restoration contractor and sought to have W&O pay for the repairs. W&O refused to pay the $157,000 cost for the golf course restoration contractor, arguably breaching the contract. Because W&O refused to discharge its duties under the contract, a reasonable jury could find that SPE GO had the right to recoup this reasonable cost of repair, along with the cost to manually irrigate the course during the

construction.[3]  *See GSB Contractors, Inc. v. Hess*, 179 S.W.3d 535, 543 (Tenn. Ct. App. 2005).

Again, the district court did not err in denying W&O's motion on this basis.

C.

Third, W&O argues that its motion for judgment as a matter of law should have been granted because SPE GO failed to give it notice and opportunity to cure, as required under Tennessee law and the terms of the contract.  But W&O has failed to establish that no reasonable jury could find that SPE GO gave such notice and opportunity to cure.

At trial, SPE GO presented evidence that one of its representatives had a face-to-face meeting with W&O and Spring Hill near the end of April, followed by weekly progress calls in which W&O explained how the project was progressing.  Additionally, SPE GO sent a letter to W&O on May 22, stating that the delays and damage to the property gave SPE GO "no choice but to immediately engage an approved subcontractor to complete restoration of the golf course in-play areas that should have been completed months ago by the city and W&O."  Given this testimony, a reasonable jury could conclude that SPE GO gave sufficient notice and opportunity to cure under the circumstances.  *See Forrest Constr. Co. v. Laughlin*, 337 S.W.3d 211, 231 (Tenn. Ct. App. 2009) (holding that notice and opportunity to cure are not "unyielding requirement[s]" and that context and surrounding circumstances must be considered).  Given our deference to jury verdicts, *Burley*, 729 F.3d at 621, the district court did not err in denying W&O's motion on this ground.

---

[3]Insofar as W&O argues on appeal that SPE GO's damages must be limited to the extent of the easement it granted to Spring Hill, this argument is misplaced.  SPE GO was not arguing damages against W&O arising out of its easement contract with Spring Hill; SPE GO sought third-party beneficiary damages arising out of the construction contract between W&O and Spring Hill. The easement is irrelevant to the rights SPE GO obtained as a beneficiary of the construction contract.  Thus, the nonbinding and out-of-jurisdiction caselaw W&O cites in relation to the limitations of remedies arising out of easements is inapposite.

D.

Finally, W&O argues that judgment as a matter of law was proper because SPE GO's damages requests were imprecise, unsupported by documentary evidence, and premised on property-damage claims that are not recoverable in a third-party-beneficiary claim for breach of contract. These arguments also fail.

W&O is correct that, under Tennessee law, damages are a necessary element of a breach of contract claim, *Winters*, 354 S.W.3d at 291, and that a plaintiff has the burden of proving damages at trial, *BancorpSouth Bank, Inc. v. Hatchel*, 223 S.W.3d 223, 227 (Tenn. Ct. App. 2006). And it is also correct that Tennessee does not permit an award of damages based upon conjecture or speculation. *Id*. at 229. But such "speculative damages are prohibited only when the existence of damages is uncertain, not when the amount of the damage is uncertain." *Id*. at 230 (quoting *Moore Constr. Co. v. Clarksville Dep't of Elec.*, 707 S.W.2d 1, 15 (Tenn. Ct. App. 1985)). This principle is not implicated here. At trial, SPE GO presented evidence that it spent $157,000 in restoration costs by hiring The Turf Company. As noted above, the jury was permitted to find that this constituted damages arising from W&O's breach of its duties under the construction contract.

Second, SPE GO presented testimony that it paid $18,000 to manually irrigate the course during the time in which W&O had damaged its irrigation lines. W&O contests this evidence by pointing out that another witness testified the $18,000 was for materials used to improve or repair the existing irrigation system, not for manual irrigation to fix damage caused by W&O's work. But we must view all evidence in SPE GO's favor, *Garrison*, 334 F.3d at 537, and cannot "weigh the evidence, evaluate the credibility of the witnesses, or substitute [our] judgment for that of the jury," *Mosby-Meachem*, 883 F.3d at 602 (some brackets omitted). The jury was free to credit the

testimony that the $18,000 went to manually irrigating the course during construction and to determine that this cost arose from W&O's breach of the contract.

Finally, SPE GO presented testimony that King's Creek earned $194,247.92 less from March to June 12, 2015, than it did over the same period in 2014. And though W&O claims that this loss was only attributable to "King's Creek Golf Management, LLC," a subsidiary of SPE GO, testimony also showed that all of King's Creek losses are "settle[d] up" at the end of the year and SPE GO is liable for them. Furthermore, SPE GO tied these losses to W&O's construction delays by noting that employees believed that having a torn-up nine-hole course rather than an eighteen-hole course contributed to the fewer rounds played, membership decline, and lower profits. Thus, the jury was free to credit this testimony and award SPE GO damages on these claims.

All in all, between the cost of the golf course contractor, the manual irrigation, and business losses, SPE GO presented evidence of $369,247.92 in damages. The jury was free to accept these damage estimates and return with a verdict and award in SPE GO's favor. The $74,738.90 damages award against W&O was within the range of reasonableness, and W&O has presented no basis for this court to reject the jury's reasonable verdict in SPE GO's favor. *Burley*, 729 F.3d at 621.

IV.

We affirm the district court's judgment.