NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 19a0635n.06

Case No. 18-1371

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

Dec 26, 2019

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| PATRICIA DENHOF, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| CITY OF GRAND RAPIDS, MICHIGAN, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | OPINION |

**BEFORE: SUHRHEINRICH, BUSH, and READLER, Circuit Judges.**

**CHAD A. READLER, Circuit Judge.** This appeal is the latest, and perhaps final, chapter in litigation that dates back some seventeen years. In 2002, Plaintiff Patricia Denhof and a fellow police officer filed a complaint alleging that the City of Grand Rapids retaliated against them for their role in a prior state-law gender discrimination suit brought by female police officers. Following a trial on Denhof's retaliation claims, a jury awarded her back pay and compensatory damages, along with $1,276,920 in front pay. Payments on Denhof's front pay award continued until 2017, when the City notified Denhof that the award was fully paid.

At issue in this appeal are the district court's orders allowing the City to offset against the front pay award costs paid by the City for Denhof's employee benefits, including healthcare, pension contributions, and Medicare Supplemental Insurance, and its order denying Denhof's

request for compensation for the 292 vacation hours she had accumulated in 2002, when she ceased to be a City employee. At issue in a related appeal, Case No. 18-1406, is the district court's order granting Denhof compensation for expenses she incurred attempting to gain recertification as a police officer.

Our resolution of this appeal turns on the district court's interpretation of its own prior orders. In that posture, we understandably afford deference to the district court and its years of experience with this litigation. Finding no abuse of discretion by the district court, we **AFFIRM.**

## I. BACKGROUND

With seventeen years of Title VII litigation behind them, the parties' long-running employment dispute appears to be drawing to an end. But not without two final appeals to this Court, both this case and Case No. 18-1406.

The litigation is well documented. Denhof, then a police officer for the City of Grand Rapids, filed her federal complaint in April 2002 alleging retaliation by the City for a prior sex-discrimination suit filed by herself and other female police officers. Two years later, a jury found in Denhof's favor on her Title VII and state-law employment claims and awarded her damages, including front pay to compensate her for anticipated future damages. The district court entered judgment in the case in 2005. In that judgment, the district court indicated that it would retain jurisdiction to manage issues arising in the enforcement of the judgment. The district court, however, later vacated its judgment and granted the City's motion under Federal Rule of Civil Procedure 50(b), entering judgment as a matter of law for the City, and conditionally ordering a new trial pursuant to Federal Rule of Civil Procedure 50(c)(1). A divided panel of this Court subsequently reversed the district court's order. *Denhof v. City of Grand Rapids*, 494 F.3d 534,

547 (6th Cir. 2007). In the decade that followed, the district court entertained a host of motions addressing various aspects of post-judgment enforcement.

This appeal arises from the district court's rulings on a series of motions filed by Denhof to clarify and enforce the judgment. Denhof sought relief on three issues: first, the City's claim that the 2005 judgment authorized it to offset against Denhof's front pay award payments made by the City for Denhof's benefits; second, the City's claim that it also had the right to offset against the front pay award amounts paid by the City for Medicare supplemental insurance; and third, the City's claim that the vacation time Denhof had accumulated as of her constructive termination in 2002 later lapsed, meaning the City was not required to compensate her for those hours.

The district court denied Denhof relief on all three issues. Denhof timely appealed these orders. In a separate opinion, we resolve the City's appeal related to the reimbursement of Denhof's recertification expenses. *See* Case No. 18-1406.

## II. ANALYSIS

Denhof's appeal challenges the district court's interpretation of its 2005 judgment. Because the district court, in most instances, is best suited to interpret its own orders, we review its interpretation under an abuse of discretion standard. *See United States v. Thompson*, 925 F.3d 292, 297 (6th Cir. 2019). To find an abuse of discretion, we must be left with a "definite and firm conviction" that the district court committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors. *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 602 (6th Cir. 2018) (citations omitted).

In addition to the standard of review, another settled legal principle guides our resolution here. That is, in Title VII litigation, the goal of a damages award is to put the plaintiff "as near as may be, in the situation [she] would have occupied if the wrong had not been committed." *Isabel*

*v. City of Memphis*, 404 F.3d 404, 414 (6th Cir. 2005) (quoting *Wicker v. Hoppock*, 73 U.S. 94, 99 (1867)). We thus analyze the district court's post-judgment orders with that principle in mind as well.

*Benefits payments*. Denhof first argues that the City should not have been allowed to apply toward her front pay award amounts it paid for Denhof's fringe benefits, which include healthcare, retirement, and pension contributions. The City notified Denhof that the front pay award would be fully paid at the end of July 2017. Denhof says she was also informed that the City had deducted from her front pay award costs associated with paying her benefits. Because the City pays the cost of benefits for its employees, over and above an employee's salary, Denhof says those costs should be charged to the City, and not deducted from her front pay award.

The terms of Denhof's front pay award, however, are determined not by the City's standard practices, but rather by the January 2005 post-trial judgment and the orders that followed. The question before us, then, is: whether the $1,276,920 front pay award issued by the jury, and memorialized in the judgment, included amounts for benefits payments, meaning the City could offset the amount of payments it made for Denhof's benefits against the front pay award; or, alternatively, whether Denhof is entitled to those benefits on top of the jury's award.

The record points to the former. At trial, Denhof testified that she was losing pension benefits as a result of being taken off the payroll. Testimony from the City's Labor Relations Manager attached a value to those lost benefits: officers employed by the Grand Rapids Police Department have a benefits package valued at 43 percent of gross pay. Seizing on that assessment, Denhof's counsel, during closing arguments, asked the jury to award damages that included a 43 percent mark-up, to represent Denhof's future loss of benefits:

> Future wage losses that we're asking for are based on a projection into the future
> that she didn't get in the near future any kind of job approximating what she had

had with the Grand Rapids Police Department . . . You heard testimony that Officer Denhof is going to be cut off of benefits in the near future. And so it is appropriate for you to take into consideration the value of the fringe benefit package, which is 43 percent of gross wages. *So we've taken 43 percent based on these 2002 figures and added that there . . . .*

R. 516, Trial Tr., Vol. X, PageID 7508 (emphasis added).

The district court's instructions, which the jury is presumed to have followed, confirm that the jury likely followed the approach to calculating damages set out by Denhof's counsel. *See CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841 (2009) (per curiam). The district court instructed the jury that it "shall also calculate separately, *as future damages*, the amount of any future wages *and benefits* that plaintiff would have earned had she not been placed on unpaid leave for that period from the date of your verdict until the date when the plaintiff would have" otherwise ceased her employment with the City. R. 516, Trial Tr. Vol. X, PageID 7486 (emphasis added). Against that backdrop, it is difficult to accept Denhof's claim that her future damages award did not already include a benefits component.

Yes, as Denhof notes, the judgment itself lists offsets that are allowed from the front pay award. But that does not alter our analysis, for two reasons. One, the list of offsets does not purport to be exclusive—it also contains a "catch all" for other setoffs the district court deems appropriate. And two, as the jury was instructed to consider the cost of benefits in calculating the award, the district court did not need to state explicitly in the judgment that providing benefits would lead to an offset. This is especially so when one considers that, in the immediate aftermath of the judgment, it was not yet clear how the judgment would be administered, and what benefits would be provided by the City. So just as it would be unfair to Denhof to deny her these benefits, it would be equally unfair to the City to make it pay those benefits twice. After all, no other City

5

officers, to our knowledge, had their benefits doubled. Doing so for Denhof would thus put her in a superior position to her former colleagues, when the law requires that she be treated the same.

As Denhof has not left us with a "firm conviction" that the district court's interpretation of the judgment's front pay provisions are in error, there was no abuse of discretion as to this issue.

*Medicare Supplemental Insurance.* Next, Denhof claims that the City also should not have been allowed to deduct from her front pay award the cost of Medicare supplemental insurance. Starting in 1989, the governing Collective Bargaining Agreements required the City to set aside an amount equal to 0.5 percent of base salary for all City employees for Medicare supplemental insurance. The City, therefore, offset this insurance expense, as it did for the other benefits, until Denhof's front pay award was exhausted in 2017.

Absent a contrary indication in the judgment, Denhof should be subjected to the same deductions. The jury, as just explained, presumably included the value of that benefit in the front pay award, just as it did for other benefits. And Denhof has not pointed us to anything in the judgment that requires a different conclusion. Although there seems to be some debate over whether Denhof will qualify for Medicare in the future, the City makes this contribution for all its employees, regardless of whether they will later qualify for Medicare.

Accordingly, the district court did not commit an abuse of discretion by allowing this amount to be offset against the front pay award, just as it did for other benefits. We therefore affirm the district court's order regarding offsets for Medicare supplemental insurance.

*Vacation time.* The City's CBA governed how City employees accumulated vacation time. In 2002, when Denhof ceased to be employed by the City, the parties agree that Denhof had over 292 hours of accumulated vacation time. Denhof requested that she be paid out the value of that

accrued time.  The district court rejected Denhof's request, noting that the judgment had already been paid in full.  That decision was safely within the district court's discretion.

Denhof's first hurdle to recovery is something of her own making: the accrued vacation time issue was "not an element of damages" considered by the jury because, as Denhof acknowledges, she did not raise the vacation-time issue at trial.  So, in moving to enforce the judgment, Denhof seeks recovery on an issue she concedes is not covered by the judgment.  Simply asking the question then seems to answer it.

Even if the issue is a live one, Denhof fails to show how the district court abused its discretion in holding that her 292 vacation hours would have lapsed under the governing CBA.  What we can glean from the record is the following:  The CBA contains a "carry-over limit," Article 18, Section 3.  This section of the CBA limits the hours that one may carry over from year to year:

> B.  As of January 1 of each year, personnel shall have credited the appropriate amount of vacation time, based upon the preceding calendar year of service.  On the anniversary date of the employee, any additional hours of vacation due shall be credited to the employee.  The employee shall use the additional hours of vacation within the balance of the allowed fifteen (15) month period. Employees shall be allowed to maintain a maximum accumulation of forty (40) days of vacation from one fiscal year to another. *Any earned vacation in excess of forty (40) days shall be considered void with the exception of the period between January 1 and November 30 during which a balance of sixty-eight (68) days which [sic] may be maintained.*

R. 744-1, CBA, PageID 9993 (emphasis added).  In a deposition, the City's deputy comptroller testified that Denhof, in accordance with the terms of the CBA, would not have been entitled to any payout for those benefits had she continued working: "if not used, [the accumulated vacation hours] lapse."

In 2010, the district court ordered that the City assess vacation time to Denhof under the presumption that she would have taken vacation days in the same proportion as she did before her

termination.  That said, it is not clear from the briefing and record how these already-accumulated hours were affected by hours accumulated after the judgment, and whether they would have lapsed for similarly situated employees in the nearly two decades that followed.  Indeed, any textual analysis of the CBA is virtually absent from the briefing.  And as Denhof carried the burden of persuasion below, and today carries the burden to show that the district court erred, these omissions work against her.  Since Denhof has not pointed us to any factual or legal error below, we are not left with a "firm conviction" that the district court erred.  We therefore affirm the district court as to this issue as well.

### III.  CONCLUSION

For the aforementioned reasons, we **AFFIRM** the judgment of the district court.